**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-00606-RMR-STV

CESCA DIXON,

Plaintiff,

v.

THE BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER,

Defendant.

---

**Defendant's Opposition to Plaintiff's Motion for Summary Judgment**

---

**Introduction**

Plaintiff Cesca Dixon's Motion for Summary Judgment should be denied, as Dixon has not demonstrated the absence of genuine fact disputes on her two claims. Dixon was a student at the Metropolitan State University of Denver. For the Spring 2023 semester, Dixon requested an accommodation to attend all of her in-person, upper-division math courses, remotely. Dixon gave two different explanations for the request: that it was needed due to her autism spectrum disorder ("ASD"), and that attending in-person courses might expose her mother to COVID-19 or other infections. The Americans with Disabilities Act requires schools to reasonably accommodate *limitations* not *disabilities*. Therefore, MSU Denver asked Dixon to clarify and provide information from a medical provider supporting what her specific limitations were with attending classes in-person. Dixon agreed to provide that documentation.

However, it is undisputed that Dixon never asked her provider for a letter describing the limitations she faced by attending in-person courses. Dixon also testified that none of her medical providers ever recommended that she attend college classes remotely. MSU Denver did not approve the request in January 2023 but agreed to reconsider it if Dixon provided additional supporting documentation. Instead, Dixon filed this lawsuit alleging that MSU Denver (1) failed to accommodate her and (2) intentionally discriminated against her in violation of the ADA and the Rehabilitation Act of 1973.

Dixon's Motion for Summary Judgment only highlights the fact that Dixon did not provide MSU Denver with documentation supporting the specific accommodation. Dixon bases her Motion almost entirely on a new letter she obtained from her provider on June 12, 2024—three weeks after Dixon's deposition in this case and after the close of discovery. The June 12, 2024 letter comes far too late and only makes clear that Dixon did not provide the requested supporting documentation *at the time* MSU Denver considered her request.

Dixon's Motion on her failure-to-accommodate claim should be rejected for three reasons. First, Dixon has not shown an absence of a genuine factual dispute regarding whether her requested accommodation was reasonable. Indeed, Dixon took no discovery in this case—no written discovery and no depositions—and has not created a factual record that would support summary judgment in her favor. Second, Dixon cannot succeed on this claim when she did not provide medical documentation to support her requested accommodation that MSU Denver reasonably requested. Third, Dixon has not shown that the absence of a genuine factual dispute as to MSU Denver's fourth affirmative defense—that Dixon's request would have fundamentally altered MSU Denver's math degree program.

Dixon's Motion on her intentional discrimination claim should be rejected for two reasons. First, Dixon has not shown deliberate indifference because it was not plainly obvious that denying her accommodation would violate her rights. Second, Dixon has not shown deliberate indifference because MSU Denver did not fail to act. Instead, it is undisputed that MSU Denver's Access Center met with Dixon multiple times, considered her accommodation requested, issued a written decision on the request, and then provided information on the process for reconsideration or appeal.

**Legal Standard**

Summary judgment is appropriate only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the movant bears the burden of proof, it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in their favor. *Water Pik, Inc. v. Med-Sys., Inc.,* 726 F.3d 1136, 1143–44 (10th Cir. 2013). The Court must consider all evidence in the light most favorable to defendant as the nonmovant. *Tolan v. Cotton*, 572 U.S. 650,

656–57 (2014); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236–37 (10th Cir. 2002). The court must also grant "the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party." *People ex rel. Rein v. Jacobs*, 2020 CO 50, ¶ 41.

While allegations in a complaint by a pro se party enjoy a liberal pleading standard, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322-323; *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**Argument**

To state a claim under Title II of the ADA, a plaintiff must show that (1) they were a qualified individual with a disability, (2) who was excluded from or denied the benefits of a public entity's program, or otherwise discriminated against (3) by reason of their disability. *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)). A plaintiff may satisfy the second element by alleging one of three theories: (1) intentional discrimination, (2) discrimination by disparate impact, or (3) failure to make reasonable accommodation. *J.V.*, 813 F.3d at 1295. To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must generally prove the same elements as under the ADA. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021). Thus, courts typically apply the same analysis when evaluating ADA and Rehabilitation claims. *Id*.

## I. Summary Judgment Is Not Warranted on Dixon's Failure-To-Accommodate Claim.

Dixon cannot show the absence of genuine fact disputes on her failure-to-accommodate claim and that she is entitled to summary judgment as a matter of law. To succeed on this claim, Dixon must show that (1) she was disabled; (2) she was otherwise qualified; (3) she requested a reasonable accommodation; and (4) she was refused the accommodation for her disability. *Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020). A school generally must provide "*meaningful access* to their programs and services[,]" however, a school is not required to provide an accommodation if it "would result in a fundamental alteration in the nature of a service, program." *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1196 (10th Cir. 2007) (quoting 28 C.F.R. § 35.164).

Dixon has not shown the absence of a genuine factual dispute as to the third element—that she requested a plausibly reasonable accommodation. Dixon also has not shown the absence of a genuine factual dispute on MSU Denver's affirmative defense that the accommodation would have been a fundamental alteration. For these reasons, Dixon's Motion should be denied.

### A. Dixon Has Not Established That Her Accommodation Request Was Reasonable.

Whether a requested accommodation was reasonable is a fact-intensive and individualized inquiry. "The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability[.]" *Punt v. Kelly Servs*., 862 F.3d 1040, 1050 (10th Cir. 2017) (internal quotation omitted). The Tenth Circuit has also held that, in the employment context, remote work is typically not a plausibly reasonable accommodation absent specific evidence that the employee could perform the job's essential

functions at home. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004). In other words, "whether a request for an at-home accommodation is reasonable must … be made on a case-by-case basis." *Id.*

The evidence in this case at least calls into question whether Dixon's request was reasonable. Dixon testified that none of her medical providers ever recommended that she attend her classes remotely due to a disability. (Ex. L.2 Dixon Tr. V.II 17:12-19:5). Dixon submitted only two documents to MSU Denver in support of her request. (Ex. L.2 Dixon Tr. V.II 27:14-18).

First, she provided an August 22, 2022 Diagnostic Evaluation diagnosing her with ASD. (Ex. A, Diagnostic Evaluation). But even if Dixon can show that she had a disability under the ADA, that does not prove her requested accommodation was reasonable. *McGuinness v. Univ. of New Mexico Sch. of Med*., 170 F.3d 974, 979 (10th Cir. 1998). The ADA requires accommodation of "limitations, not disabilities." *Robertson*, 500 F.3d at 1197 (quoting *Taylor v. Principal Financial Group, Inc*., 93 F.3d 155, 164 (5th Cir.1996)). Dixon's Diagnostic Evaluation did not identify any limitations with attending in-person courses. Dixon admitted that the Diagnostic Evaluation did not recommend that Dixon attend her classes remotely. (Ex. R, RFA #3). Instead, it included a generic statement that she could request reasonable accommodations from MSU Denver. (Ex. A, Diagnostic Evaluation; Ex. B, Rasheed Decl. ¶ 11).

Second, Dixon provided a December 23, 2022 letter from Tracie Willson, Dixon's psychiatric nurse practitioner. (Ex. M, Willson Letter). Willson wrote that Dixon "experiences increased distress when exposed to some sounds, lights, and large groups of people[.]" *Id.* However, Willson did not describe any specific limitations Dixon faced with attending classes in-person. Dixon admits that Willson's letter did not recommend that Dixon attend her classes

remotely, but stated "[s]pecific accommodations may be requested by Cesca[.]" (Ex. R, RFA #2; Ex. M, Willson Letter).

There is other evidence suggesting that Dixon's request was not reasonable. There was ambiguity regarding the basis for Dixon's request. It is undisputed that she requested the accommodation due to her ASD and to avoid spreading COVID-19 or infection to her mother, who has a rare autoimmune disease. (Ex. D, MSU072-73; Ex. L.1, Dixon Tr. V.I 59:18-60:13). During a December 20, 2022 telephone call Dixon's mother emphasized that "we don't go out … for her to be in a closed classroom where nobody is wearing a mask … we still have COVID going around … the potential of her bringing that home to me, making me ill, and causing me to die, is a huge issue as well." (Ex. E, December 20, 2022 Audio Recording, 5:43-6:09). Dixon also previously attended in-person courses at MSU Denver prior to the COVID-19 pandemic. (Ex. L.1, Dixon Tr. 23:22-24:6). Finally, three weeks after filing her complaint, Dixon met with MSU's Study Abroad office and requested information on study abroad programs in England. (Ex. L.2, Dixon Tr. Vol.II 56:15-57:6; Ex. Q, MSU181-194). Dixon testified that she only intended to study abroad "online[,]" (Ex. L.2, Dixon Tr. Vol.II 59:12-61:3) but the meeting at least appears inconsistent with her accommodation request.

By comparison, Dixon's Motion does not point to facts that establish her request was reasonable. Dixon's Motion first points to a new June 12, 2024 letter from Danielle Rabinovich allegedly "detailing why Plaintiff needs to attend classes remotely[.]" Mot. at 5. But this letter was not provided to MSU Denver in January 2023 when Dixon's accommodation request was considered, and Rabinovich was not Dixon's provider at that time. The letter also comes after the close of discovery and after Dixon testified that no medical provider ever recommended that she

attend classes in-person. (Ex. L.2 Dixon Tr. V.II 17:12-19:5). Rabinovich's letter is not evidence that Dixon's request was reasonable at the time she requested it in 2022. Even if the Court were to consider it, Rabinovich's letter provides only vague support. It states that Dixon "might benefit from virtual classes at school" as Dixon "may display behaviors or have specific needs … [that] may include challenges with social interactions[.]" (Ex. C, Rabinovich Letter).

Dixon also points out that she "was registered for an Online Upper Division Math Course MTH 3420 in Spring 2021." Mot. at 9. MSU Denver was forced to offer several courses in a remote format in Spring 2021. (Ex. H, Ribble Decl. ¶ 11). But MSU Denver's obligation to temporarily suspend in-person teaching for a global pandemic does not demonstrate Dixon's request was reasonable. For example, in *Thomas v. Bridgeport Bd. of Educ.*, No. 3:20-CV-1487 (VLB), 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022), a federal district court granted summary judgment for a school after finding a teacher's request to continue teaching remotely after the pandemic was not reasonable. "In-person instruction did not cease to be an essential function, it was just temporarily suspended at the start of the COVID-19 pandemic—an unprecedented health emergency[.]" *Id.* The court looked to EEOC guidance following the pandemic that advised "telework for the purpose of protecting [employee] safety from COVID-19" did not establish "that telework is always a feasible accommodation" moving forward. *Id.* Those same considerations should be applied to student requests after the pandemic. The temporary suspension of in-person instruction did not establish that in-person instruction was no longer essential or virtual classes were always reasonable.

Moreover, the temporary suspension of in-person instruction only confirmed to MSU's Math Department that remote instruction was not a reasonable accommodation. The Department

found that remote instruction was an ineffective method for teaching mathematics due to a lack of in-person engagement and personal engagement with students. (Ex. H, Ribble Decl. ¶ 11). For this reason, the Department returned to in-person instruction for upper-division math courses. (Ex. H, Ribble Decl. ¶ 12). Dixon's request to attend in-person courses remotely was not the same as all students attending a virtual course during the pandemic. (Ex. H, Ribble Decl. ¶ 26). In-person courses were designed with in-class participation in mind, which could not be accommodated if one person was attending remotely. (Ex. H, Ribble Decl. ¶¶ 26-27).

Dixon also points to a few stray phrases in the Access Center's guidelines and the MSU Denver website. Mot. at 9. Neither document states that attending courses remotely would constitute a reasonable accommodation. The Access Center's excerpt states that any attendance flexibility "must be reasonable, meaning it cannot compromise the essential requirements or learning outcomes of the course." (Dkt. 30-7). The guidelines also state all accommodations "are determined on a case-by-case basis." *Id.* Dixon's citations to these documents does not establish that her request was reasonable, and Dixon's motion does not provide any individualized explanation why remote attendance would have been reasonable for her. "Reasonableness is not a constant. To the contrary, what is reasonable in a particular situation may not be reasonable in a different situation—even if the situational differences are relatively slight." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992).

### B. Dixon Did Not Provide Medical Information Supporting the Accommodation that MSU Denver Reasonably Requested.

Dixon also cannot succeed on her failure-to-accommodate claim because she did not provide MSU Denver with medical information supporting the request. The ADA requires

accommodation of "limitations, not disabilities." *Robertson*, 500 F.3d at 1197. For that reason, "federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'" *Templeton v. Neodata Servs., Inc*., 162 F.3d 617, 617 (10th Cir. 1998) (quoting *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). The purpose of the interactive process, according to regulations under Title I of the ADA, is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

Although addressed less frequently by courts, this process of individual inquiry also plays an important role in the educational context, where a school attempts to determine the limitations on a student's educational access and what modifications can mitigate those limitations. *See McCulley v. Univ. of Kansas Sch. of Med*., 591 F. App'x 648, 651 (10th Cir. 2014) (describing the school's "iterative process" with student); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001) (requiring an "individual inquiry" under Title III of the ADA).

Dixon cannot succeed on her failure-to-accommodate claim because she did not provide medical information MSU Denver reasonably requested, resulting in "a breakdown in the interactive process." *Templeton v. Neodata Servs., Inc*., 162 F.3d 617, 617 (10th Cir. 1998). "The Tenth Circuit has ruled an 'employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation.'" *Hurt v. Sch. Dist. No. 1 in Cnty. of Denver Colorado*, 664 F. Supp. 3d 1227, 1240 (D. Colo. 2023) (quoting *Templeton*, 162 F.3d at 1238). The same rule should apply in the educational context because "the deciding principles of employment

discrimination cases can be applied to ADA claims in the educational context." *McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 978 (10th Cir. 1998).

There is no dispute that MSU Denver requested information from Dixon regarding her limitations in attending in-person classes. On August 4, 2022, Dixon contacted the university's Access Center requesting to attend her classes "purely online." (Ex. D, MSU072-73). Sheriff Rasheed, an accessibility coordinator at the Access Center, worked with Dixon regarding her request over a few months. (Ex. B, Rasheed Decl. ¶¶ 9-14). Rasheed discussed Dixon's request with her by phone on August 8, 2022; December 19, 2022; and December 20, 2022. *Id.* During the December 20 call, Rasheed explained he needed information from a medical provider on her need for the specific accommodation. (Ex. B, Rasheed Decl. ¶ 14; Ex. E, December 20, 2022 Audio Recording 10:00-11:30). He explained that the documentation should explain what impact attending in-person classes would have on Dixon. (Ex. L.2, Dixon Tr. V.II 11:3-15; 14:4-19; 38:6-39:4). Dixon was scheduled to meet with her provider two days later and agreed to get such a letter. *Id.*

There is also no dispute that Dixon did not provide MSU Denver with a provider letter regarding her limitations. Dixon testified that none of her providers ever recommended that she attend her classes remotely or suggested it was a reasonable accommodation for Dixon. (Ex. L.2, Dixon Tr. V.II 17:12-19:5). After the December 20 call with Rasheed, Dixon met with Willson on December 22. However, Dixon did not ask Willson to write a letter regarding her need to attend classes remotely at this appointment. (Ex. L.2, Dixon Tr. V.II 36:7-40:1). Instead, Dixon requested a letter "to state I was autistic and state that I needed an accommodation. So I'm pretty sure that's all I told her." (Ex. L.2, Dixon Tr. V.II 36:11–17). Dixon testified that she did not ask Willson to

describe any limitations because Dixon believed "that my diagnosis would be enough." (Ex. L.2, Dixon Tr. V.II 39:20).

On December 27, Dixon sent Rasheed the letter from Willson. (Ex. B, Rasheed Decl. ¶ 15). However, the letter did not describe any impacts in-person classes would have on Dixon. The letter did not suggest Dixon should attend classes at MSU Denver remotely. Instead, the letter stated, "Specific accommodations may be requested by Cesca to promote a positive learning environment." (Ex. M, Willson Letter). Rasheed determined that the letter did not support Dixon's request to attend classes remotely. (Ex. B, Rasheed Decl. ¶ 16). Rasheed conferred with his supervisor at the Access Center, who agreed in denying the accommodation. (Ex. B, Rasheed Decl. ¶¶ 17-18). On January 4, 2023, Rasheed notified Dixon he could not approve her request. (Ex. N, MSU114-115). However, Rasheed wrote in the same email that he was "willing to review and consider changing our determination based on receiving any additional supporting documentation." (Ex. N, MSU114-115; Ex. B, Rasheed Decl. ¶ 23).

As in *Hurt*, Rasheed's request for the information was especially reasonable based on the "ambiguity" over Dixon's request. 664 F. Supp. 3d at 1240. Dixon's two explanations regarding her need for the accommodation warranted further follow-up. Moreover, information regarding the specific limitations Dixon faced with in-person courses was information that only Dixon could provide. *See Templeton*, 162 F.3d at 619 ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown.") (internal quotation omitted). Rasheed told Dixon that if he could not grant the specific accommodation she wanted, he would work to find other methods to accommodate her needs. (Ex. B, Rasheed Decl. ¶ 14; Ex. E, December 20, 2022 Audio Recording 11:30-12:00).

Rasheed had previously worked with Dixon in 2021 to provide her other academic accommodations. (Ex. B, Rasheed Decl. ¶¶ 4-8). However, Rasheed could not work with Dixon to craft an alternative reasonable accommodation if she did not provide information on her limitations. For example, at her deposition Dixon described for the first time that her "most difficult" issue with in-person attendance was driving to campus and navigating the buildings on campus. (Ex. L.1, Dixon Tr. Vol.I 45:8-21). Such information would be helpful in crafting a reasonable accomodation.

### C. Dixon's Accommodation Request Would Have Fundamentally Altered MSU Denver's Math Program.

Even if Dixon could show there were no material fact disputes on her accommodation request, Dixon's Motion does not demonstrate that there is no dispute on MSU Denver's affirmative defenses. Specifically, the university's fourth affirmative defense asserts that Dixon's accommodation request "would have fundamentally altered Defendant's in-person Math program and degree." Dkt. 88 at 8. Public entities do not need to provide an accommodation if they "can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Here, MSU Denver denied Dixon's accommodation, at least in part, because it would have fundamentally altered the nature of the math program and math degree. (Ex. N, MSU114-115).

MSU Denver does not offer an online math degree program. (Ex. H, Ribble Decl. ¶ 6). The math program is structured for in-class participation. *Id.* Students must also complete all exams in-person, even for online courses. (Ex. H, Ribble Decl. ¶ 9). During the pandemic, faculty in the Department found remote instruction an ineffective method for teaching mathematics. (Ex. H,

Ribble Decl. ¶ 9). This was due to reduced student engagement, inability to teach individual students, and significant cheating on assignment and exams. *Id.* Because the math degree was designed and structured for in-person learning, attending the courses online would have substantially altered the program. (Ex. H, Ribble Decl. ¶ 27).

This case is comparable to the Sixth Circuit's decision in *Gati v. W. Kentucky Univ.*, 762 F. App'x 246 (6th Cir. 2019), which affirmed summary judgment for a defendant-university on a failure-to-accommodate claim. In *Gati*, the plaintiff requested to attend his courses remotely because his disability prevented him from driving to the main campus. 762 F. App'x at 249. The university denied the accommodation because remote attendance was a fundamental alteration of the curriculum. The Sixth Circuit sided with the university. In-person instruction was an essential part of the school's counseling degree and the curriculum "necessitates classroom interaction between students and instructor." *Id.* at 251. The Court wrote that "[r]ight or wrong, we must credit the university's academic decision with the widest range of deference." *Id.* In this case, MSU Denver has put similar facts into evidence that in-class participation was essential for the math degree. (Ex. H, Ribble Decl. ¶¶ 6; 26-27).

The Tenth Circuit has similarly stated that "[e]ducational institutions are accorded deference with regard to the level of competency needed for an academic degree." *McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998). Schools do not need to "waive a course requirement deemed reasonably necessary for the conferral of an academic degree." *Id.* Here, Dixon's requested accommodation would have meant she would be advanced through the program without completing in-person components of the degree. (Ex. H, Ribble Decl. ¶ 27). The degree she would have been awarded would have been fundamentally different from

the in-person degree MSU Denver provides. *Id.* At the very least, there are material factual disputes on MSU Denver's fourth affirmative defense that foreclose Dixon's Motion.

**II. Summary Judgment Is Not Warranted on Dixon's Intentional Discrimination Claim.**

Dixon also cannot show there are no material fact disputes on her claim of intentional discrimination. Dixon's claim is based on MSU Denver's alleged deliberate indifference. To succeed on this claim, Dixon must prove both that the university (1) had knowledge that harm to a federally protected right was substantially likely, and (2) that the university failed to act on that likelihood. *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009). As to the second prong, "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* (quotation omitted).

Dixon's Motion cites to *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) for support that "Plaintiff has similarly established that Defendants did intentionally discriminate against Plaintiff[.]" Mot. at 8. However, *Duvall* denied a defendant's summary judgment motion finding that the plaintiff had created triable issues on her deliberate indifference claim. *Duvall*, 260 F.3d at 1140. Thus, *Duvall* does not establish that Dixon's summary judgment motion should be granted or that she has demonstrated the university acted with deliberate indifference.

Moreover, recognizing that deliberate indifference requires a *substantial* likelihood of a violation, some courts have required in failure-to-accommodate cases a showing that it was "plainly obvious" that the accommodation was reasonable and that the request would not fundamentally alter the program. *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1148 (D. Minn. 2008) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). This standard is more appropriate, otherwise a plaintiff could

make a deliberate indifference claim every time a public entity denies an accommodation. *Id.* Schools are not obligated to provide accommodations that are unreasonable or which would fundamentally alter the program. *McCulley v. Univ. of Kansas Sch. of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014).

**A. Dr. Ribble Was Not Deliberately Indifferent.**

Dixon claims that Dr. Buffy Ribble, the chair of the Department, was deliberately indifferent because of her December 19, 2022 email. Mot. at 7. Dixon's Motion states that Ribble's email "hurt her feelings[,]" but otherwise does not explain how Ribble failed to act. *Id.* Dixon contacted Ribble requesting an accommodation to attend her math courses remotely. (Ex. H, Ribble Decl. ¶ 14). Ribble informed Dixon that she could contact the math instructors directly to see if she could attend their courses remotely. (Ex. H, Ribble Decl. ¶ 15). However, Ribble wrote that only the Access Center could evaluate her request for an ADA accommodation, and directed her to the Access Center. (Ex. H, Ribble Decl. ¶ 20). Thus, upon receiving Dixon's email, Ribble offered two possible solutions for Dixon. She could contact her instructors about an informal accommodation, or Dixon could seek a formal accommodation through the Access Center.

Dixon focuses on one sentence in Ribble's email, where Ribble wrote "our program may not be the program for you." (Ex. G, MSU012). However, even assuming this email harmed Dixon's rights, Ribble strongly disputes Dixon's interpretation of the sentence. (Ex. H, Ribble Decl. ¶¶ 18-20). Ribble was not making a comment about Dixon's medical condition or her educational future. *Id.* Instead, Ribble wanted to caution Dixon that, without a formal accommodation, Ribble could not guarantee that she could attend every math course online that

was required to complete the degree. *Id.* There is at least a material dispute of fact regarding Dr. Ribble's intent with the statement.

### B. Rasheed Was Not Deliberately Indifferent.

Dixon also claims that Rasheed, Dixon's accessibility coordinator at the Access Center, was on notice that Dixon's rights would be violated "if she were not afforded said accommodation." Mot. at 8. However, Dixon's Motion has not demonstrated that Rasheed failed to act on her accommodation request. Rasheed had three teleconferences with Dixon over the course of the Fall 2022 semester to learn more about her request. (Ex. B, Rasheed Decl. ¶¶ 10; 12; 13). Rasheed requested that Dixon provide medical documentation explaining the impact attending in-person courses would have on her. (Ex. B, Rasheed Decl. ¶ 14). Rasheed reviewed and considered the supporting documentation that Dixon provided but concluded that it did not support the requested accommodation. (Ex. B, Rasheed Decl. ¶ 22). Rasheed also engaged the relevant instructors from the Department who confirmed the classes could not be offered remotely without fundamentally altering the program. (Ex. B, Rasheed Decl. ¶¶ 18-21). The Tenth Circuit has held that a school is "hardly indifferent" to a student when it has "engaged in an iterative process with [the student]" and provided "[the student] ample opportunity to request accommodations and demonstrate their feasibility." *McCulley*, 591 F. App'x at 651.

Dixon has also not shown that Rasheed knew denying the accommodation was substantially likely to harm her rights. Dixon's Motion states that Rasheed was "notified of Plaintiff's ADA rights on December 20, 2022, during a tele-meeting with Plaintiff and her mother." Mot. at 8. To demonstrate deliberate indifference, Dixon must show more than Rasheed was aware of the ADA or that he was negligent in handling Dixon's request. Dixon must establish

that Rasheed had some consciousness that her request was truly reasonable. Instead, Rasheed has submitted testimony that, based on all the information he had, the accommodation was not reasonable. (Ex. B, Rasheed Decl. ¶ 22).

**C. Edward Brown Was Not Deliberately Indifferent.**

Dixon also asserts that MSU Denver's Chief of Staff, Edward Brown, was deliberately indifferent by not contacting Dixon "after January 9, 2023, in which he stated he was still investigating the incident." Mot. at 8. Dixon never contacted Brown. (Ex. P, Brown Decl. ¶ 12). Brown did follow up on Dixon's accommodation request after Dixon's mother contacted the Office of the President. (Ex. P, Brown Decl. ¶¶ 5-6). Brown first contacted Ribble to gather more information about the issue. (Ex. P, Brown Decl. ¶ 7). On January 17, 2023, Brown met with Rasheed and Rasheed's supervisor Melissa Cermak. (Ex. P, Brown Decl. ¶ 10). They explained that the Access Center had determined Dixon's request was not reasonable and would have fundamentally altered the degree program. *Id*. They also explained that they provided Dixon with information on how to request reconsideration of the decision or how to appeal the decision under the university's ADA grievance procedures. *Id.*

While Brown may not have contacted Dixon's mother again after the January 17 meeting, Dixon misconstrues Brown's role at the university. Brown was not an investigator or a grievance officer. However, when complaints were raised, he would follow up with the appropriate university office to ensure they were taking appropriate action to resolve the situation. (Ex. P, Brown Decl. ¶ 4).

Dixon's Motion asserts Brown had knowledge of the likelihood of a violation because her mother wrote in her email that the situation "could cause the University to be sued." Mot. at 8.

However, legal threats cannot establish that an individual knew a violation of rights was substantially likely. Based on his January 17 meeting, Brown had no reason to believe that the Access Center failed to take appropriate action in reviewing Dixon's request. (Ex. P, Brown Decl. ¶ 11). Brown also learned at the meeting that Dixon had already been provided with information about the process to appeal the decision. *Id.* However, Dixon never appealed the decision at the university. (Ex. L.2, Dixon Tr. Vol.II 50:6-8).

**Conclusion**

For the reasons stated above, this Court should deny Dixon's Motion for Summary Judgment as to both of her claims.

DATED this 15th day of August, 2024.

PHILIP J. WEISER
Attorney General

*/s/Matthew J. Worthington*
MATTHEW J. WORTHINGTON, No. 47987*
ANGELA R. ZIPPIN, No. 56719*
Assistant Attorneys General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6124; -6395
matt.worthington@coag.gov
angela.zippin@coag.gov

**Counsel of Record for Defendant Board of Trustees of Metropolitan State University of Denver*

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing **Defendant's Opposition to Plaintiff's Motion For Summary Judgment** upon all parties herein by filing copies of same using the ECF System, this 15th day of August 2024 addressed as follows:

Cesca Dixon
1165 South Broadway
Suite 215
Denver, CO 80210

*Plaintiff Pro Se*

*/s/Jen Davis-Weiser*
Jen Davis-Weiser