**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-00606-RMR-STV

CESCA DIXON,

Plaintiff,

v.

THE BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER,

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Fed. R. Civ. P. 56, Defendant Board of Trustees of Metropolitan State University of Denver moves for summary judgment.

## INTRODUCTION

Plaintiff, Cesca Dixon, was a student at Metropolitan State University of Denver (Defendant), majoring in Applied Mathematics. For the Spring 2023 semester, Dixon requested an accommodation to attend all of her in-person, upper-division math courses, remotely. Dixon gave two different explanations for the request: that it was needed due to her autism spectrum disorder ("ASD"), and that attending in-person courses might expose her mother to COVID-19 or other infections. Defendant engaged in an interactive process with Plaintiff to determine whether the requested accommodation could be reasonably approved. Defendant concluded the accommodation would be unreasonable and constitute a fundamental alteration, and denied the request. Plaintiff filed this lawsuit alleging Defendant failed to accommodate her disability and

was deliberately indifferent to her rights, in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in their favor. *Water Pik, Inc. v. Med-Sys., Inc.,* 726 F.3d 1136, 1143–44 (10th Cir. 2013). However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* A mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. City & Cnty. of Denver*, 2011 WL 1595981, at *3 (D. Colo. Apr. 27, 2011). Instead, a nonmovant "must proffer facts such that a reasonable jury could find in her favor." *Id*. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## ARGUMENT

To state a claim under Title II of the ADA, a plaintiff must show that (1) they were a qualified individual with a disability, (2) who was excluded from or denied the benefits of a

public entity's program, or otherwise discriminated against (3) by reason of their disability. *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1295 (10th Cir. 2016) (*quoting Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)). A plaintiff may satisfy the second element by alleging one of three theories: (1) intentional discrimination, (2) discrimination by disparate impact, or (3) failure to make reasonable accommodation. *J.V.*, 813 F.3d at 1295. To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must generally prove the same elements as under the ADA.[1] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021). Thus, courts typically apply the same analysis when evaluating ADA and Rehabilitation Act claims. *Id.*

Plaintiff asserts two theories under the ADA/Rehabilitation Act: (1) that MSU Denver failed to provide Plaintiff a reasonable accommodation, Pl.'s Am. Compl. p. 7 ¶¶ 7-8, and (2) that MSU Denver intentionally discriminated against the Plaintiff, *id*. at pp. 5-7 ¶¶ 2-6.

**1. The Court Should Grant Defendant Summary Judgment on Plaintiff's Failure to Accommodate Claim.**

To survive a motion for summary judgment, Plaintiff must first prove that she requested a plausibly reasonable accommodation. *Hurt v. Sch. Dist. No. 1 in Cnty. of Denver Colorado,* 664 F. Supp. 3d 1227, 1240 (D. Colo. 2023), *appeal dismissed sub nom. Hurt v. Sch. Dist. No. 1 in Cnty. of Denver*, No. 23-1136, 2023 WL 7215340 (10th Cir. June 1, 2023). A public educational institution must provide reasonable accommodations when it knows that a student has a disability and "requires an accommodation of some kind to participate in or receive the benefits

[1] However, the ADA and Rehabilitation Act have different causation requirements. Under the Rehabilitation Act, a plaintiff's disability must be the sole reason of the discrimination, whereas the ADA requires only that the disability be a but-for-cause of the discrimination. *Crane*, 14 F.4th at 1313.

of its services." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d at 1299 (*quoting Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir.2007)). Plaintiff has failed to establish that she required an accommodation where she failed to provide information necessary to the interactive process, and to establish that her requested accommodation was reasonable. Because she has failed to meet these burdens, summary judgment should be granted for Defendant.

**a. A student has a duty to provide information in the interactive process.**

A student's request for accommodation triggers a postsecondary institution's duty to engage the student in a process to determine barriers to the student's educational access and reasonable accommodations that could be instituted to mitigate the impact of those barriers. *McCulley v. Univ. of Kansas Sch. of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014). The 10th Circuit Court of Appeals has addressed the nuances of this process predominantly in the context of employment cases, as the implementing regulations for Title I of the ADA provide that an employer may need to engage in "an informal, interactive process" with an employee to determine the "precise limitations resulting from the disability and potential reasonable accommodations[.]" 29 C.F.R. § 1630.2(o)(3).

Title II of the ADA, which governs Plaintiff's claims, does not explicitly call for an "interactive process" with students; however, the necessity for postsecondary institutions to engage in such a process is commonly recognized by federal courts. *See McCulley v. Univ. of Kansas Sch. of Med.*, 591 F. App'x 648, 651 (10th Cir. 2014), *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 252 (6th Cir. 2019), *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1078 (8th Cir. 2006), and *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010). Further,

employment cases can provide guidance on Plaintiff's claims. *See McGuinness v. Univ. of New Mexico Sch. of Med.*, 170 F.3d 974, 978 (10th Cir. 1998) (explaining that "the deciding principles of employment discrimination cases can be applied to ADA claims in the educational context.").

Postsecondary institutions are not obligated to approve every accommodation requested by a student with a disability; a request for accommodation obligates both parties "'to proceed in a reasonably interactive manner' to ascertain a reasonable accommodation." *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1231 (10th Cir. 2009) (quoting *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1172 (10th Cir.1999)). To assist this process, a student has a duty to provide information about their disability-related limitations so that the institution may determine what reasonable accommodations could be implemented. *See McCulley*, 591 F. App'x at 651 (describing the school's "iterative process" with student); *see also Templeton v. Neodata Servs., Inc*., 162 F.3d 617, 619 (10th Cir.1998); *Turner*, 2011 WL 1595981, at *3.

**b. Plaintiff failed to provide information necessary to the interactive process, precluding her from bringing a claim.**

The undisputed evidence in this case shows that, upon Plaintiff's request for a remote attendance accommodation, Defendant engaged in an interactive process with Plaintiff to determine if the requested accommodation was necessary for Plaintiff to participate in or receive the benefits of Defendant's educational programs. On August 4, 2022, Plaintiff contacted the university's Access Center requesting to attend her classes "purely online." Ex. A MSU072-73. Plaintiff also provided the Access Center with an August 16, 2022 Diagnostic Evaluation diagnosing her with ASD. Ex. B, Diagnostic Evaluation. Plaintiff's Diagnostic Evaluation did

not identify any limitations with attending in-person courses. Plaintiff admitted that the Diagnostic Evaluation did not recommend that Plaintiff attend her classes remotely. Ex. C, Pl.'s Resp. to Req. for Admis. #3. Instead, it simply stated that Plaintiff could contact the Access Center to determine reasonable accommodations from MSU Denver. Ex. B, Diagnostic Evaluation; Ex. D, Rasheed Decl. ¶ 11.

Sheriff Rasheed, an accessibility coordinator at the Access Center, worked with Plaintiff regarding her request over a few months. Ex. D, Rasheed Decl. ¶¶ 9-14. Rasheed discussed Plaintiff's request with her by phone on August 8, 2022; December 19, 2022; and December 20, 2022. *Id.* During the December 20 call, Rasheed explained he needed information from a medical provider on her need for the specific accommodation. Ex. D, Rasheed Decl. ¶ 14; Ex. E, December 20, 2022 Audio Recording 10:00-11:30. He explained that the documentation should explain what impact attending in-person classes would have on Plaintiff. Ex. F-2, Dixon Tr. V.II 11:3-15; 14:4-19; 38:6-39:4. Plaintiff was scheduled to meet with her provider, Tracie Willson, two days later and agreed to obtain a letter describing such. *Id.*

There is also no dispute that, after the December 20 call with Rasheed, Plaintiff did not provide MSU Denver with provider documentation regarding her limitations. On December 22, Plaintiff met with Willson but did not ask Willson to write a letter regarding her need to attend classes remotely. Ex. F-2, Dixon Tr. V.II 36:7-40:1. Instead, Plaintiff requested a letter "to state I was autistic and state that I needed an accommodation. So I'm pretty sure that's all I told her." Ex. F-2, Dixon Tr. V.II 36:11–17. Plaintiff testified that she did not ask Willson to describe any limitations because Plaintiff believed "that my diagnosis would be enough." Ex. F-2, Dixon Tr. V.II 39:20.

Plaintiff provided Rasheed with Willson's letter, which stated that Plaintiff "experiences increased distress when exposed to some sounds, lights, and large groups of people[.]" Ex. G, Willson Letter. Willson did not describe any specific limitations Plaintiff faced with attending classes in-person. *Id*. Plaintiff admits that Willson's letter did not recommend that Plaintiff attend her classes remotely. Ex. C, Pl.'s Resp. to Req. for Admis. #2. Plaintiff testified that none of her providers ever recommended that she attend her classes remotely or suggested it was a reasonable accommodation for Plaintiff. Ex. F-2, Dixon Tr. V.II 17:12-19:5.

Rasheed determined that the letter did not support Plaintiff's request to attend classes remotely. Ex. D, Rasheed Decl. ¶ 16. Rasheed conferred with his supervisor at the Access Center, who agreed in denying the accommodation. Ex. D, Rasheed Decl. ¶¶ 17-18. On January 4, 2023, Rasheed notified Plaintiff he could not approve her request. Ex. H, MSU114-115. However, Rasheed wrote in the same email that (1) he was "willing to review and consider changing our determination based on receiving any additional supporting documentation" and (2) Plaintiff had the ability to appeal the denial of the requested accommodation. *Id*. The email provided a link to Defendant's ADA Student Grievance Procedure, which outlines its appeals process. *Id*. Soon after Rasheed sent the January 4, 2023 email, and without following up with him, Plaintiff unenrolled from her spring 2023 courses and enrolled in online courses unrelated to her Applied Mathematics degree. Pl's Am. Compl. at 7, ¶ 6. Plaintiff did not provide Rasheed with any further documentation or appeal the Access Center's denial of her accommodation request. Ex. F-2, Dixon Tr. Vol. II 27:14-23; 50:6-8.

Rasheed's request for additional supporting information was especially reasonable based on the "ambiguity" over Plaintiff's request. *Hurt*, 664 F. Supp. 3d at 1239-40. In *Hurt*, this Court

found that an employee's failure to provide documentation to support an accommodation request precluded her claim of discrimination based on a failure to accommodate. *Id*. at 1238. The defendant-employer requested additional documents to support the plaintiff's request for accommodation due to ambiguities in the provided medical records. *Id.* at 1239. When the plaintiff did not provide the supplementary documents, defendant denied the requested accommodation. *Id*. Finding the request for clarifying information to be reasonable, this Court held that the defendant could not be liable for failure to provide reasonable accommodation where the plaintiff did not provide documentation to support her request. *Id*. at 1240.

Here, it is undisputed that Plaintiff's accommodation request was based not only on her ASD, but to avoid spreading COVID-19 or infection to her mother, who has a rare autoimmune disease and for whom Plaintiff is a caretaker. Ex. A, MSU072-73; Ex. F-1, Dixon Tr. V.I 59:18-60:13. During a December 20, 2022 telephone call Plaintiff's mother emphasized that "we don't go out … for her to be in a closed classroom where nobody is wearing a mask … we still have COVID going around … the potential of her bringing that home to me, making me ill, and causing me to die, is a huge issue as well." Ex. E, December 20, 2022 Audio Recording, 5:43-6:09. The actual accommodation being requested by Plaintiff was also unclear. Plaintiff's August 2022 request to Rasheed was to attend her courses "purely online." Ex. A, MSU072-73. In December 2022, Plaintiff stated "If I can join a session with my professors and just simply be propped up in the class that would be greatly appreciated." Ex. I, MSU014. Plaintiff's mother told Rasheed that Plaintiff was "asking [] if the professor or somebody can record the class and just e-mail it to her. Or just get the transcript of the class and not be nicked for not being present, physically present, in that class." Ex. E, December 20, 2022 Audio Recording 1:17-1:50. These

varying explanations and requests warranted further follow-up, particularly considering Plaintiff's previous ability to attend her courses in-person. *See Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 919–20 (10th Cir. 2013).

Further, the information regarding the specific limitations Plaintiff faced with in-person courses was information that only Plaintiff could provide. *See Templeton*, 162 F.3d at 619 ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown.") (internal quotation omitted). Rasheed told Plaintiff that if he could not grant the specific accommodation she wanted, he would work to find other methods to accommodate her needs. Ex. D, Rasheed Decl. ¶ 14; Ex. E, December 20, 2022 Audio Recording 11:30-12:00. Rasheed had previously worked with Plaintiff in 2021 to provide her other academic accommodations. Ex. D, Rasheed Decl. ¶¶ 4-8; Ex. J, MSU 116. However, Rasheed could not work with Plaintiff to craft an alternative reasonable accommodation if she did not provide information regarding how her disability limited her educational access.

The undisputed evidence demonstrates that Defendant engaged in an interactive process with Plaintiff to determine her disability-related limitations and find a reasonable accommodation, Defendant reasonably requested additional information to support Plaintiff's request, and Plaintiff failed to provide the requested information. Without such information, Defendant did not have sufficient information to support granting the remote accommodation request or propose alternative reasonable accommodations. In light of these undisputed facts, Plaintiff is unable to establish that Defendant failed to provide her reasonable accommodation and Defendant is entitled to judgment as a matter of law.

**c. The Requested Accommodation Was Not Reasonable.**

The purpose of reasonable accommodations is to ensure that students with disabilities can receive equivalent benefits and services available to students without disabilities. *Profita v. Regents of the Univ. of Colorado*, 709 F. App'x 917, 920 (10th Cir. 2017). However, institutions are not obligated to provide substantial (i.e., unreasonable) accommodations. *McGuinness,* 170 F.3d at 979. “The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability[.]” *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (internal quotation omitted).

At the summary judgment stage, a burden-shifting framework is used to assess the reasonableness of proposed accommodations. *Osborne v. Baxter Healthcare Corp.,* 798 F.3d 1260 (10th Cir. 2015). The plaintiff bears the burden of showing the accommodation is facially reasonable, “*i.e..,* ordinarily or in the run of cases.” *Id*. at 1267 (internal quotations omitted). *See also Gati*, 762 F. App’x at 251 (initial burden on student-plaintiff to propose accommodation and demonstrate its reasonableness). If this burden is met, the defendant must cite to facts showing it is unable to offer the accommodation. *Id*. If the defendant provides such, the plaintiff must proffer evidence of plaintiff’s own abilities and proposed accommodations that negate the defendant’s evidence. *Id*. at 1268. While this burden of production shifts, the burden of persuasion lies ultimately with the plaintiff. *Id*.

Plaintiff is unable to satisfy her initial burden of proof. Crucially, Plaintiff cannot cite to any disputed facts regarding whether the requested accommodation was necessary for her ability to receive equal access to Defendant’s educational programs. Plaintiff testified that none of her medical providers ever recommended that she attend her classes remotely due to a disability. Ex.

F-2, Dixon Tr. V.II 17:12-19:5. Plaintiff submitted no supporting documentation to Rasheed other than the August 16, 2022 Diagnostic Evaluation and Tracie Willson's letter. Ex. F-2, Dixon Tr. V.II 27:14-18. Plaintiff admits that neither document recommends that Plaintiff attend her classes remotely. Ex. C, Pl.'s Resp. to Req. for Admis. #3; Ex. C, Pl.'s Resp. to Req. for Admis. #2.

The ADA requires accommodation of "limitations, not disabilities." *Robertson,* 500 F.3d at 1197 (*quoting Taylor v. Principal Financial Group, Inc*., 93 F.3d 155, 164 (5th Cir.1996)). Neither Plaintiff's Diagnostic Evaluation nor Willson's letter identify any limitations Plaintiff faces regarding in-person class attendance. Willson wrote that Dixon "experiences increased distress when exposed to some sounds, lights, and large groups of people[.]" *Id.* However, Willson did not describe any specific limitations Dixon faced which would require an accommodation to attend courses in an online format. *Id*. Prior to the COVID-19 pandemic, Plaintiff completed her in-person classes without a remote attendance accommodation. Ex. F-1 Dixon Tr. V.I 23:22-24:6. Further, it is undisputed that Plaintiff requested the accommodation in part due to her role as her mother's caretaker. Ex. A, MSU072-73; Ex. F-1 Dixon Tr. V.I 59:18-60:13; Ex. E, December 20, 2022 Audio Recording, 5:43-6:09.

Even if Plaintiff could demonstrate the necessity of a remote attendance accommodation, she cannot establish that such accommodation would be ordinary or in the run of cases. The Tenth Circuit has held that, in the employment context, remote work is typically not a plausibly reasonable accommodation absent specific evidence that the employee could perform the job's essential functions at home. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004). In other words, "whether a request for an at-home accommodation is reasonable must … be made on a case-by-case basis." *Id*. Here, Rasheed considered Plaintiff's request, reviewed what

documentation she provided in support of that request, and concluded that an accommodation to permit remote attendance in courses designed for in-person participation was unreasonable. Ex. H, MSU114; Ex. D, Rasheed Decl. ¶ 23.

**d. The Requested Accommodation Constituted a Fundamental Alteration of Defendant's Mathematics Program and Courses.**

Summary judgement should also be granted because Plaintiff's requested accommodation would have fundamentally altered MSU Denver's math degree and program. *McGuiness*, 170 F.3d at 979 (granting summary judgment for postsecondary school when student requested "a substantial, rather than a reasonable accommodation")(internal quotation omitted); *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 251 (6th Cir. 2019) (granting summary judgment to defendant-university because "*[t]aking courses remotely*" would "fundamentally and academically alter" the school's degree program). Title II's regulations expressly permit a school to deny requested accommodations that "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

First, the undisputed and unrebutted evidence is that in-person instruction was an essential part of the specific upper-division math courses at issue. Unlike lower-level math courses on mechanical concepts, Introduction to Mathematical Proofs (MTH 3100) is a small, 12-to-15-student course, focused on developing a student's abstract and theoretical skills in creating their own mathematical proofs. Ex. L, McKenna Decl. ¶¶ 3-9. About 50% of the course is devoted to in-class participation and depends on real-time interaction between the instructor and the student to achieve mastery. *Id.* This teaching methodology is not reasonably possible remotely, which is why the course is designated for in-person. *Id.* ¶¶ 16; 19-20. Likewise, Differential Equations (MTH 3420) is an upper-division, largely theoretical math course, with in-

person instruction as an essential part. Ex. M, Harder Decl. ¶¶ 10-14. The course is taught through in-person interaction with the instructor and students, and students working together in small groups. *Id.* The course cannot be reasonably taught with one student attending virtually without compromising the educational goals. *Id.* ¶ 17.

Second, the undisputed fact is that in-class instruction is an essential requirement of MSU Denver's in-person residential math degree program. MSU Denver does not offer an online or remote version of its math degree program. Ex. K, Ribble Decl. ¶¶ 6-7. The program is designed for in-person, on campus, instruction. *Id.* The Department of Mathematics and Statistics (Department) offers some lower-level lectures online, where online instruction does not substantially change the academic environment. However, the Department does not offer any upper-division courses required for the Department's degree programs in an online format. *Id.* at ¶¶ 7-8. The Department temporarily suspended in-person instruction during the COVID-19 pandemic and moved several courses online in 2020 and 2021. *Id.* at ¶ 10. However, attempting to teach advanced mathematic courses online only further confirmed to the Department that remote instruction was ineffective, and in-person participation and engagement was essential. *Id.* at ¶ 11-12; 26-27; Ex. L, McKenna Decl. ¶¶ 11–16; Ex. M, Harder Decl. ¶¶ 16-17.

Third, it is undisputed that in-person exams and evaluations are an essential part of the math degree program. Students are graded on in-person activities in upper-division math courses. Ex. L, McKenna Decl. ¶ 9; Ex. K, Ribble Decl. ¶ 27. Unlike remote participants, in-person instruction permits the instructor to directly assess student learning and contributions to small group projects and adjust instruction with real-time feedback. Ex. L, McKenna Decl. ¶ 7; 12-13; Ex. K, Ribble Decl. ¶ 27. Moreover, to maintain the rigor and integrity of the program, MSU

Denver requires all exams to be conducted in-person, even when the course is otherwise taken online. Ex. K, Ribble Decl. ¶ 9; Ex. L, McKenna Decl. ¶ 15; Ex. M, Harder Decl. ¶ 15.

This Court should defer to the university's academic decision to offer only a residential, in-person math degree, which requires completion of in-person upper-division math courses. Educational institutions are granted deference in designing the essential parts of their academic program. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) (Courts "should show great respect for the faculty's professional judgment"); *McGuiness*, 170 F.3d at 979 ("an education institution is not required to waive a course requirement deemed reasonably necessary for the conferral of an academic degree"); *Gati*, 762 F. App'x at 251 ("we must credit the university's academic decision with the widest range of deference").

This deference is similar to the deference afforded employers in defining the essential functions of a job. A court will not "second-guess an employer's judgment" when it determines a request to work at home would be an unreasonable accommodation and eliminate essential job functions. *Mason*, 357 F.3d at 1124 (granting summary judgment for defendant-employer because "request for an at-home accommodation is unreasonable"). The Court does not sit as a "super personnel department" questioning whether in-person attendance is essential at work, *id.* at 1122, just as the Court does not sit as a super college provost, second-guessing whether individual academic programs can be offered remotely without substantially altering the program. *Gati*, 762 F. App'x at 250-51 ("we acknowledge that the federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum and should afford a university's judgment and discretion great respect.").

The Court's role is to ensure that the defendant has not turned "every condition of employment" into an "essential job function[,]" *Adair v. City of Muskogee*, 823 F.3d 1297, 1307 (10th Cir. 2016) (quotation omitted), and its judgment is "job-related, uniformly enforced, and consistent with business necessity[,]" *Mason*, 357 F.3d at 1119; *see also Ewing*, 474 U.S. at 225 (Courts do not override academic decisions "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.")

Applying this rationale to the educational context, MSU Denver has not defined every part of the curriculum as "essential" to undercut accommodation requests. MSU Denver previously offered Plaintiff academic accommodations to meaningfully access its math program. Ex. D, Rasheed Decl. ¶¶ 4-8; Ex. J, MSU 116. The university also offers certain lower-division math courses remotely, where they are not required for the math degree. Ex. K, Ribble Decl. ¶ 7. However, there is nothing unreasonable about a university determining *in-person* instruction is an essential and required component of an *in-person* math degree program, especially when that determination was based on the Department's practical experience of attempting to offer its required upper-division courses in an online format during the pandemic. Moreover, Plaintiff has not presented any evidence that challenges the uniformity of the Department's view that in-person instruction is an essential part of upper-division math courses.

In *Gati*, the Sixth Circuit affirmed summary judgment for a defendant-university on a similar failure-to-accommodate claim. 762 F. App'x 246. The plaintiff requested to remotely attend courses required for his counseling degree program because his disability prevented him from driving to the university's main campus. *Id.* at 249. The university denied the

accommodation on the grounds that remote attendance would fundamentally alter the program's curriculum. The court agreed, based on the university's testimony, that in-person instruction was an essential part of the school's counseling degree and the curriculum "necessitates classroom interaction between students and instructor." *Id.* at 251.

This Court should apply the same analysis here. Plaintiff's requested accommodation would have fundamentally altered the Department's courses, such that Plaintiff would not have received a comparable educational experience to students attending in person. Ex. L, McKenna Decl. ¶ ¶ 12-13, 16, 19-20; Ex. M, Harder Decl ¶¶ 16-17. If granted, Plaintiff would have advanced through the program without completing in-person components of the degree, which Department faculty found to be a necessary component of their curriculum. Ex. K, Ribble Decl. ¶ 27; Ex. L, McKenna Decl. ¶ ¶ 19-20. The degree Plaintiff would have been awarded would have been fundamentally different from the in-person degree MSU Denver provides. Ex. K, Ribble Decl. ¶ 27. The undisputed facts show that the accommodation would have been a fundamental alteration, and would not have served the purpose of ensuring students with disabilities are provided the same educational opportunities as non-disabled students. *Profita*, 709 F. App'x at 920.

**2. The Court Should Grant Defendant Summary Judgment on Plaintiff's Deliberate Indifference Claim.**

To succeed on her deliberate indifference claim, Plaintiff must establish that Defendant failed to act in spite of its knowledge of a strong likelihood that its conduct would result in a violation of Plaintiff's rights. *Barber*, 562 F.3d at 1228-29. In failure to accommodate cases, deliberate indifference is shown where (1) the plaintiff requested an accommodation; (2) it was

"plainly obvious" that the accommodation was both reasonable and necessary; and (3) it was "plainly obvious" that granting the accommodation would not have fundamentally altered defendant's program. *AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1147–48 (D. Minn. 2008). A defendant is not liable for deliberate indifference if it could have reasonably believed the accommodation would constitute a fundamental alteration. *Id*.

Here, Plaintiff cannot demonstrate a strong likelihood that MSU knew its denial of her requested accommodation would result in a violation of her rights because it was not plainly obvious that the requested accommodation was reasonable or necessary. Despite Sheriff Rasheed's request for documentation supporting Plaintiff's need for a remote attendance accommodation, Plaintiff did not provide such. Dec. 20 Audio Recording (10:55–11:40); Ex. D, Rasheed Decl. ¶¶ 14.d, 16; Ex. F-2, Dixon Tr. Vol. II 36:7–17; Ex. C, Pl.'s Resp. to Req. for Admis. #2. It is undisputed that Plaintiff was able to successfully complete in-person courses at MSU Denver between fall 2018 and spring 2020 semesters. Ex. F-1 Dixon Tr. Vol. I 23:22-24:6. Based on the information made available to Rasheed, he could not determine that the requested accommodation was reasonable. Ex. D, Rasheed Decl. ¶ 22. This was then confirmed by his consultation with his supervisor, who similarly found the request was not justified and thus unreasonable. *Id*. at ¶ 18. Because Defendant reasonably believed the requested accommodation was not reasonable, Plaintiff cannot establish Defendant knew of a strong likelihood that denying the request was a violation of her rights.

Similarly, Plaintiff cannot demonstrate that Defendant acted with deliberate indifference when Rasheed reasonably concluded that the requested accommodation would fundamentally alter

the Department's program and courses. Prior to notifying Plaintiff that the accommodation request was denied, Rasheed communicated with the relevant Department faculty. *Id.* at ¶¶ 19-21. The faculty shared information with Rasheed regarding the curriculum and format of the Mathematics degree program generally, and Plaintiff's spring 2023 courses specifically. *Id.*, Ex. K, Ribble Decl. ¶ 25-26; Ex. M, Harder Decl. ¶ 8, Ex. L, McKenna Decl. ¶ 19-20. The faculty members considered the request in the context of their respective courses and determined that they could not reasonably offer remote attendance options. *Id.* Considering this information, Rasheed reasonably determined that the requested accommodation would fundamentally alter the Department's degree program and courses. Ex. D, Rasheed Decl. ¶ 22.

Plaintiff also cannot demonstrate that Defendant failed to act. To establish a defendant's failure to act for the purposes of a deliberation indifference claim, Plaintiff must demonstrate that Defendant was not merely negligent, but acted with "an element of deliberateness." *Barber*, 562 F.3d at 1229 (quoting *Lovell v. Chandler,* 303 F.3d 1039, 1056 (9th Cir.2002)). A defendant does not fail to act in the face of an accommodation request where it "engaged in an iterative process with [plaintiff] and allowed her ample opportunity to request accommodations and demonstrate their feasibility." *McCulley*, 591 F. App'x at 651. Here, it is undisputed that Rasheed communicated with Plaintiff regarding her request on multiple occasions, and reasonably requested additional information from Plaintiff that would explain the necessity of the accommodation. Ex. D, Rasheed Decl. ¶¶ 9-14. Rasheed explicitly explained what the necessary supporting documentation would entail. Ex. F-2, Dixon Tr. V.II 11:3-15; 14:4-19; 38:6-39:4. He conferred with his supervisor, and contacted the Department to gather information about the ability to reasonably provide the accommodation in Plaintiff's degree program. Ex. D, Rasheed Decl. ¶¶

18-21. Rasheed's actions establish that Defendant was not deliberately indifferent to Plaintiff's rights.

Plaintiff also claims that Dr. Ribble was deliberately indifferent because of a December 19, 2022 email regarding Plaintiff's request to attend her Mathematics courses remotely. Am. Compl. at 6, ¶ 4. Specifically, Plaintiff focuses on one sentence in Dr. Ribble's email, in which she stated "our program may not be the program for you." Ex. O, MSU012. Dixon contends that this comment made her feel "as though the department just didn't want to be bothered with her and she was the only one with Autism in the department to ever request such a thing." Am. Compl. at 6, ¶ 4. Plaintiff does not explain how Dr. Ribble's email constitutes a failure to act. Plaintiff contacted Dr. Ribble requesting to attend her math courses remotely. Ex. K, Ribble Decl. ¶ 14. Dr. Ribble informed Plaintiff that she could contact her math instructors directly to see if she could attend their courses remotely. *Id*. at ¶ 15; Ex. O, MSU012. However, Dr. Ribble wrote that only the Access Center could evaluate her request for an ADA accommodation, and directed her to the Access Center. Ex. K, Ribble Decl. ¶ 20; Ex. O, MSU012. Thus, upon receiving Plaintiff's email, Dr. Ribble offered two possible solutions. Plaintiff could contact her instructors about an informal accommodation, or she could seek a formal accommodation through the Access Center.

Finally, Plaintiff alleges deliberate indifference because of a lack of communication from Edward Brown, Chief of Staff to the Office of the President at MSU Denver. Am. Compl. at 7. It is undisputed that Plaintiff never contacted Brown. Ex. F-2, Dixon Tr. Vol. II 53:21-23; Ex. P, Brown Decl. ¶ 12. However, Brown did follow up on communications from Plaintiff's mother regarding her concerns about the accommodation request and communications between Plaintiff and Dr. Ribble. Ex. P, Brown Decl. ¶¶ 5-6. Brown first contacted Dr. Ribble to gather more

information about the issue. *Id*. at ¶ 7. On January 17, 2023, Brown met with Rasheed and Rasheed's supervisor Melissa Cermak. *Id*. at ¶ 10. They explained that the Access Center had determined Dixon's request was not reasonable and would have fundamentally altered the degree program. *Id*. They also explained that they provided Dixon with information on how to request reconsideration of the decision or how to appeal the decision under the university's ADA grievance procedures. *Id.*

Brown did not communicate again with Plaintiff's mother after the January 17 meeting, but Plaintiff misconstrues Brown's role at the university. Brown was not an investigator or a grievance officer. Ex. P, Brown Decl. ¶ 4. However, when complaints were raised, he would follow up with the appropriate university office to ensure they were taking appropriate action to resolve the situation. *Id*. Plaintiff asserts Brown had knowledge of the likelihood of a violation because Plaintiff's mother shared with Brown her belief that Plaintiff's rights were being violated as a result of Plaintiff's communications with Dr. Ribble and the denial of the requested accommodation. Am. Compl. at 7. However, legal threats cannot establish that an individual knew a violation of rights was substantially likely. Based on his January 17 meeting, Brown had no reason to believe that the Access Center failed to take appropriate action in reviewing Plaintiff's request. Ex. P, Brown Decl. ¶ 11. Brown also knew that Plaintiff had already been provided with information about the process to appeal the Access Center's decision. *Id*. However, Plaintiff never appealed the decision at the university. Ex. F-2, Dixon Tr. Vol. II 50:6-8.

**CONCLUSION**

For the reasons stated above, the Court should grant Defendant summary judgment as to Plaintiff's ADA and Rehabilitation Act claims.

DATED this 22nd day of August 2024.

PHILIP J. WEISER
Attorney General

*/s/ Angela R. Zippin*
MATTHEW J. WORTHINGTON, No. 47987*
ANGELA R. ZIPPIN, No. 56719*
Assistant Attorneys General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6124; -6395
matt.worthington@coag.gov
angela.zippin@coag.gov

**Counsel of Record for Defendant*
*Board of Trustees of Metropolitan State University of Denver*

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing Defendant's Motion for Summary Judgment upon all parties herein by filing copies of same using the ECF System, this 22nd day of August 2024 addressed as follows:

Cesca Dixon
1165 South Broadway
Suite 215
Denver, CO 80210

*Plaintiff Pro Se*

*/s/Jen Davis-Weiser*
Jen Davis-Weiser