**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Regina Rodriguez**

**CASE NO.** 23-cv-00606-RMR-STV

**CASE CAPTION** Cesca Dixon v. the Board of Trustees of Metropolitan State University of Denver

**PARTY OR PARTIES SEEKING SUMMARY** JUDGMENT Defendant

<u>Statement of Undisputed Facts</u>

| **Defendant's Motion for Summary Judgment on Plaintiff's Claim # ____** | | | |
|---|---|---|---|
| **Number** | **Movant's purported undisputed material fact (with citations)** | **Non-movant's response (with citations)** | **Do the parties agree that the purported fact is material?** |
| 1. | Cesca Dixon ("Plaintiff") was a student at the Metropolitan University of Denver ("Defendant" or "university") from Spring 2019 to Spring 2021. Plaintiff planned to enroll again for the Spring 2023 semester.<br><br>Ex. F-1, Dixon Tr. Vol. I 15:18-16:5. | Disputed. Plaintiff did attend MSU Denver Spring 2019-Spring 2021, and all of 2023. Plaintiff attended in Spring 2024, but had to take an administrative withdrawal due to the University altering online classes in the math department to asynchronous requiring online students to appear in in-class setting to take tests. The change caused mental distress Plaintiff. **[Dkt.123, Pg. 1]; [DKT. 119, Pg. 1 of 4]; [DKT: 120, Attachment 2, pg. 1]** | Disagree |
| 2. | On August 4, 2022, Plaintiff emailed the Access Center asking for assistance "in getting my courses [for the Spring 2023 semester] to be purely online."<br><br>Ex. A, MSU072–73; Ex. F-1, Dixon Tr. Vol. I 58:9–60:11. | Disputed. Plaintiff and mother clarified that Plaintiff was seeking to attend classes "remotely" throughout December 2022.<br>**[DKT:134,pg.2,00:01:21]; [DKT. 1, Attachment 2; line 28]; [DKT:134,pg.2,00:01:21]** | Disagree |

| | | | |
|---|---|---|---|
| 3. | Plaintiff asked to attend her courses "purely online to make a better environment for someone with Autism Spectrum Disorder (ASD) and to better suit my job at the moment which is a live-in aid to my mother."<br><br>Ex. A, MSU072–73; Ex. F-1 Dixon Tr. Vol. I 58:9–60:11. | Disputed. Plaintiff and mother clarified that Plaintiff was seeking to attend classes "remotely" throughout December 2022. **[DKT:134,pg.2,00:01:21]; [DKT. 1, Attachment 2; line 28]; [DKT:134,pg.2,00:01:21]** | Disagree |
| 4. | On multiple occasions from August 2022 through January 2023, Plaintiff discussed her request with Sheriff Rasheed, an accessibility coordinator at the Access Center, by telephone.<br><br>Ex. F-1, Dixon Tr. Vol I 63:12–64:3; 69:20–70:7; Ex. F-2, Dixon Tr. Vol. II 8:1–9:12. | Disputed. Plaintiff's discussion of accommodation ended on December 20, 2022 after the tele-conference with Rasheed. **[DKT:148; Pg. 13]**. Rasheed communicated to Dr. Ribble via email that he was denying Plaintiff's request on the same day. **[DKT: 150; 64:3-64:8]** | Disagree |
| 5. | During a December 20, 2022 telephone call, Plaintiff and her mother Jennifer Dixon ("J. Dixon") met with Mr. Rasheed. Plaintiff created an audio recording of the meeting. J. Dixon stated that Plaintiff was requesting that she not be required to attend her in-person courses, and the university instead send her recordings or transcripts of each class.<br><br>Ex. E, Dec. 20 Audio Recording (1:00–2:18). | Disputed. Plaintiff's mother stated: "She's not asking that a class that is set already as in-class, to be changed to online…What she's asking for is if the professor or somebody can record the class and just email it to her, or just get the transcript of the class and not be nicked for not being present, physically present, because part of her disability is social anxiety." **[DKT:134; Pg. 2, 00:01:04-00:01:54]** | Disagree |
| 6. | During the December 20, 2022 telephone call, Mr. Rasheed stated "we cannot guarantee that would be a reasonable accommodation … for a class that is specifically designated as in-person." He stated "the accommodation we do provide must not fundamentally alter the class … what I mean by that it mustn't compromise the standard or the original design of the class."<br><br>Ex. E, Dec. 20 Audio Recording (3:10-4:24; 10:00–10:55); Ex. D, Rasheed Decl. ¶ 14.c.,e. | Disputed. Rasheed states, "Particular accommodation we might be able to look into that which I don't guarantee that that would be a reasonable accommodation." **[DKT:134; Pg. 4; 00:03:52-00:04:00].** Plaintiff requested access to her upper division courses made accessible by transcripts, recordings, Zoom, Teams, CCTV, or by any means that would permit access to her classes. None of these would have altered the integrity of the classes. **[DKT:134,pg.2,00:01:21]; [DKT. 1, Attachment 2; line 28]; [DKT:134,pg.2,00:01:21]** | Disagree |

| | | | |
|---|---|---|---|
| 7. | During the December 20, 2022 telephone call, Mr. Rasheed stated that "for any accommodation that we provide for our students, there must be justification for that … like documentation that would justify the need for that particular accommodation." Mr. Rasheed said that Plaintiff's medical provider "should provide something that states 'if Cesca attends the class, this will be the implication, this will be the impact' … try to be specific why she cannot attend the class physically. That is what we are looking for."<br><br>Ex. E, Dec. 20 Audio Recording (3:10-4:24; 10:55–11:40); Ex. D, Rasheed Decl. ¶ 14.d. | Disputed. Rasheed did receive the Letter from Dr. Willson. The letter stated, "Cesca experiences increased distress when exposed to some sounds, lights, and large groups of people, inhibiting her ability to focus and properly absorb information. Specific accommodations may be requested by Cesca in order to promote a positive learning environment." **[DKT: 42; Attachment 2; Pg. 1, Line 5-11].** When Plaintiff is exposed to settings with those conditions, a classroom contains them all, Plaintiff experiences increased distress, lack of focus, decreased ability to absorb information. Plaintiff is supposed to request accommodations that promote a better learning environment. | Disagree |
| 8. | Plaintiff stated she would be seeing her therapist soon and agreed to ask for that documentation.<br><br>Ex. F-2, Dixon Tr. Vol. II 26:19–25; Ex. D, Rasheed Decl. ¶ 14.g. | Disputed. Ms. Dixon stated, "…she has her appointment on Thursday, so we'll ask her psychiatrist if there's anything that she can provide for us…" **[DKT: 143; 00:13:26]** | Disagree |
| 9. | Plaintiff never provided MSU Denver the documentation Mr. Rasheed requested regarding her limitations with attending in-person courses.<br><br>Ex. F-2, Dixon Tr. Vol. II 27:14-23; 37:8-40:1; Ex. D, Rasheed Decl. ¶ 16. | Disputed. Plaintiff provided the requested letter from her provider, Tracie Willson. Dr. Willson is stating that when Plaintiff is exposed to "some sounds, lights, and large groups of people," all specific things that are in physical classrooms, such things "impact" the Plaintiff by "inhibiting her ability to focus and properly absorb information." **[DKT: 42; Attachment 2; Pg. 1, Line 5-11].** The absence of the word "impact" in Willson's letter does not invalidate that it directly states all issues that affect Plaintiff in a classroom setting. | Disagree |
| 10. | Plaintiff met with her therapist two days later on December 22, 2022, but did not ask her to write a | Disputed. "Did you tell her that the reason why you 19· ·wanted a letter from her was because you were 20· ·requesting a remote | Disagree |

| | | | |
|---|---|---|---|
| | letter addressing her need to attend classes remotely.<br><br>Ex. F-2, Dixon Tr. Vol. II 36:7–37:24; 39:5-40:1. | attendance accommodation? 21· · · · · ·A.· ·Yes, I did." **[DKT: 150; Attachment 2; 36:7-24]** | |
| 11. | Instead, Plaintiff asked her therapist to "state that I was autistic and state that I needed an accommodation. So I'm pretty sure that's all I told her."<br><br>Ex. F-2, Dixon Tr. Vol. II 36:7–17. | Disputed. "Did you tell her that the reason why you 19· ·wanted a letter from her was because you were 20· ·requesting a remote attendance accommodation? 21· · · · · ·A.· ·Yes, I did." **[DKT. 150, Attachment 2; 36:7-24]**<br><br>"I have this diagnosis of autism and I 15· ·struggle with the normal classroom setting and that's 16· ·been really hard for me, I struggle with this, this, 17· ·and this.· So I think I did tell her about it, but I 18· ·didn't ask her can you please say that.· But, yes, I 19· ·remember telling her what I was struggling with.· Yes." **[DKT. 150, Attachment 2; 36:7-24]** | Disagree |
| 12. | Plaintiff testified that she believed her ASD "diagnosis would be enough[.]"<br><br>Ex. F-2, Dixon Tr. Vol. II 39:18–21. | Disputed. "I have this diagnosis of autism and I 15· struggle with the normal classroom setting and that's 16· been really hard for me, I struggle with this, this, 17· and this.· So I think I did tell her about it, but I 18· ·didn't ask her can you please say that.· But, yes, I 19· ·remember telling her what I was struggling with. Yes." **[DKT. 150, Attachment 2; Pg. 36;7-24]**<br><br>"…so I knew I had to go with who I had available to me and I thought that my diagnosis would be enough, because they do specialize in autism, but it wasn't." **[DKT: 150; Attachment 2; Pg. 18; 8-20]**<br>Context: Plaintiff's Diagnostic Evaluation states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution. **[DKT. 146; PG. 9, lines 24-28], [DKT. 146; Pg. 10, lines 16-18], [DKT. 146; Pg. 3, lines 16-17], [DKT. 146; Pg. 6, lines 38-39] [DKT: 150; Attachment 2; Pg. 6, 1-25 (Cl 1)**<br>Recommendations from providers are not a requirement | Disagree |

| | | | |
|---|---|---|---|
| | | under the law. The Access Center "suggests" elements (7) that can be used, one is how disability "impacts" the *student*; another is any recommendations. These are not requirements for obtaining accommodation at MSU, they are "suggestions". The requirements precede this section. https://www.msudenver.edu/access/potential-students/#documentation-guidelines | |
| 13. | In December 2022, Plaintiff provided Mr. Rasheed with a December 23, 2022 letter from her therapist. The letter stated Plaintiff was being treated for Autism Spectrum Disorder, Generalized Anxiety Disorder, and Post Traumatic Stress Disorder. The letter stated "[s]pecific accommodations may be requested by Cesca in order to promote a positive learning environment."<br><br>Ex. F-2, Dixon Tr. Vol. II 48:16–18; Ex. G, MSU132; Ex. D, Rasheed Decl. ¶ 15, 16. | Disputed. Plaintiff provided letter from her provider, Tracie Willson. Dr. Willson is stating that when Plaintiff is exposed to "some sounds, lights, and large groups of people," all specific things that are in physical classrooms, such things "impact" the Plaintiff by "inhibiting her ability to focus and properly absorb information." And she may request accommodations that will facilitate a better learning environment. **[DKT: 42; Attachment 2; Pg. 1, Line 5-11].** | Disagree |
| 14. | The December 23, 2022 letter from Plaintiff's therapist did not recommend that Plaintiff attend classes at MSU Denver remotely.<br><br>Ex. C, Pltf.'s Resp. to Request for Admission #2; Ex. D, Rasheed Decl. ¶ 16. | Disputed. Plaintiff's Diagnostic Evaluation states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution. **[DKT. 146; PG. 9, lines 24-28], [DKT. 146; Pg. 10, lines 16-18], [DKT. 146; Pg. 3, lines 16-17], [DKT. 146; Pg. 6, lines 38-39] [DKT: 150; Attachment 2; Pg. 6, 1-25 (Cl 1)** Recommendations from providers are not a requirement under the law. The Access Center "suggests" elements (7) that can be used, one is how disability "impacts" the *student*; another is any recommendations. These are not requirements for obtaining accommodation at MSU, they are "suggestions". The requirements precede this section. | Disagree |

| | | | |
|---|---|---|---|
| | | https://www.msudenver.edu/access/potential-students/#documentation-guidelines | |
| 15. | None of Plaintiff's medical providers ever recommended that she attend courses remotely.<br><br>Ex. F-2, Dixon Tr. Vol. II 18:5–19:5. | Disputed. Plaintiff's Diagnostic Evaluation states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution. **[DKT. 146; PG. 9, lines 24-28], [DKT. 146; Pg. 10, lines 16-18], [DKT. 146; Pg. 3, lines 16-17], [DKT. 146; Pg. 6, lines 38-39] [DKT: 150; Attachment 2; Pg. 6, 1-25 (Cl 1)]** Recommendations from providers are not a requirement under the law. The Access Center "suggests" elements (7) that can be used, one is how disability "impacts" the *student*; another is any recommendations. These are not requirements for obtaining accommodation at MSU, they are "suggestions". The requirements precede this section on website. https://www.msudenver.edu/access/potential-students/#documentation-guidelines | Disagree |
| 16. | Plaintiff's Insights Diagnostic Evaluation, which diagnosed her with ASD, did not recommend that Plaintiff attend classed at MSU Denver remotely.<br><br>Ex. C, Pltf.'s Resp. to Request for Admission #3. | Disputed. Plaintiff's Diagnostic Evaluation states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution. **[DKT. 146; PG. 9, lines 24-28], [DKT. 146; Pg. 10, lines 16-18], [DKT. 146; Pg. 3, lines 16-17], [DKT. 146; Pg. 6, lines 38-39] [DKT: 150; Attachment 2; Pg. 6, 1-25 (Cl 1)]** Recommendations from providers are not a requirement under the law. The Access Center "suggests" elements (7) that can be used, one is how disability "impacts" the *student*; another is any recommendations. These are not requirements for obtaining accommodation at MSU, they are "suggestions". The requirements precede this section. | Disagree |

| | | | |
|---|---|---|---|
| | | https://www.msudenver.edu/access/potential-students/#documentation-guidelines | |
| 17. | Mr. Rasheed consulted with his supervisor, Associate Director of the Access Center Melissa Cermak, to discuss his determination that Plaintiff had not provided information justifying the remote attendance accommodation request. Ms. Cermak agreed with Mr. Rasheed's assessment.<br><br>Ex. D, Rasheed Decl. ¶ 18. | Disputed. There is no declaration from Cermak stating she "agreed" nor actually reviewed the circumstances. Hearsay. | Disagree |
| 18. | On January 4, 2023, Mr. Rasheed emailed Dr. Elizabeth Ribble, then-Chair of the Department of Mathematics and Statistics, and Drs. Patricia McKenna and Christopher Harder, the instructors for Plaintiff's spring 2023 in-person courses, to discuss whether Plaintiff's request could reasonably be approved.<br><br>Ex. D, Rasheed Decl. ¶ 19; Ex. N, MSU035. | Disputed. Rasheed sent this email at 11:00 a.m. Professor McKenna responded January 4, 2023 at 23:39 p.m. **[DKT:50; Attachment 1; Pg. 2; Line 21]**. Dr. Harder responded on January 5, 2023 at 2:19 p.m. **[DKT: 50; Attachment 1; Pg. 3; Line 5]** Plaintiff received her denial letter from Rasheed on January 4, 2023 at 2:41 p.m. Dr. McKenna said she would not offer her class in remote/hyflex/hybrid, Dr. Harder stated he could not do requested form. | Disagree |
| 19. | MSU Denver does not offer an online math degree program.<br><br>Ex. K, Ribble Decl. ¶ 6-7. | Disputed. This is an accommodation issue. However**,** To date, MSU offers completely online degree programs for a plethora of STEM Major's including Nursing, Chemistry, Aerospace and Aviation Engineering, and more STEM Subjects that actually do require physical work like Lab work, practicing medical care, etc.. 100% Online Options - 100% Online Anywhere in the World (msudenver.edu)<br><br>They also offer "Working remotely outside the office full- or part-time via internet, phone, or other electronic communication method" for Staff, including Staff that are | Disagree |

| | | | |
|---|---|---|---|
| | | currently students at MSU. Establish and maintain successful alternative work arrangements - MSU Denver | |
| 20. | In-person instruction is an essential component of MSU Denver's math degree program.<br><br>Ex. K, Ribble Decl. ¶ 11-12; Ex. L, McKenna Decl. ¶¶ 11–16; Ex. M, Harder Decl. ¶¶ 16-17. | Disputed. Please see video **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]**<br>"So, it's going to be like it was during the pandemic... the good news is that you'll have a recording of what we do every class…which, to me, was an extremely valuable piece of this…"<br>, "…the reason I am choosing Webwork is because it's free, and there's some things I really like about it, especially for these Upper-Division Classes.", etc.<br><br>MSU Nursing program has online degrees; Plaintiff has taken chemistry courses at MSU with labs online. | Disagree |
| 21. | In-person instruction was an essential component of Introduction to Mathematical Proofs (MTH 3100).<br><br>Ex. L, McKenna Decl. ¶¶ 3-9. | Disputed. **Please see [DKT.153; attachment 1, Pg. 1-2]** Which contains two pictures Plaintiff took during her Calculus III class with Dr. McKenna in order to refer back to the class for upcoming assignments, in which Dr. McKenna can be seen clearly accomplishing all the tasks she states were essential components of Introduction to Mathematical Proofs.<br>For example: "students missed the intricacies of the in-class experience, such as overhearing my comments to another small group"<br>Here, Dr. McKenna is speaking to all members of the class about a specific Homework question one student had and the ease with which the entire class is able to "overhear" her comments and participate in "peer review" of the homework.<br>Introduction to Mathematical Proofs was taught *online* from 2020-2021. Plaintiff was also requesting any form of remote | Disagree |

| | | | |
|---|---|---|---|
| | | learning, including but not limited to Teams and Zoom which would allow student to attend class remotely via computer in the class. | |
| 22. | Introduction to Mathematical Proofs (MTH 3100) could not be reasonably taught with one student attending remotely.<br><br>Ex. L, McKenna Decl. ¶¶ 16; 19-20. | Disputed. Please see **[DKT.153; attachment 1, Pg. 1-2]** Note that MSU offers many 100% online STEM degrees in Nursing, Aviation and Aerospace Management, and more, yet cannot offer ways for Plaintiff to attend math classes remotely. | Disagree |
| 23. | In-person instruction was an essential component of Differential Equations (MTH 3420).<br><br>Ex. M, Harder Decl. ¶¶ 10-14. | Disputed. Please refer to Flash Drive **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]** | Disagree |
| 24. | Differential Equations (MTH 3420) could not be reasonably taught with one student attending remotely.<br><br>Ex. M, Harder Decl. ¶ 17. | Disputed. Please refer to Flash Drive **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]**<br>The law does not accommodate preferences. | Disagree |
| 25. | The Department temporarily suspended in-person instruction during the COVID-19 pandemic and moved several courses online in 2020 and 2021.<br><br>Ex. K, Ribble Decl. ¶ 10. | Disputed**.** MSU Denver Continues to have courses in an online, hybrid, asynchronous, and synchronous formats as of 2024**. [Dkt.123, Pg. 1].**<br>From 2020-2021 Upper Division Math courses were available online for MSU students. Plaintiff was registered for an Online Upper Division Math Course MTH 3420 in Spring of 2021. **[DKT: 1, Attachment 5, pg. 1] [DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]** | Disagree |
| 26. | The Department found remote instruction during the COVID-19 pandemic ineffective at teaching upper-division math courses. | Disputed. Please refer to Flash Drive **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]** | Disagree |

| | | | |
|---|---|---|---|
| | Ex. K, Ribble Decl. ¶ ¶ 11-12; Ex. L, McKenna Decl. ¶¶ 11–16. | | |
| 27. | The COVID-19 pandemic reconfirmed to the Department that in-person instruction was an essential component of upper-division math courses.<br><br>Ex. K, Ribble, Decl. ¶¶ 11-12; 26-27. | Disputed. Please refer to Flash Drive **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]** | Disagree |
| 28. | The Department determined that Plaintiff's accommodation request would fundamentally alter the courses and degree program.<br><br>Ex. K, Ribble Decl. ¶¶ 25-27. | Disputed. In Rasheed's denial letter to Plaintiff, he states in number (1): [the accommodation] "must not fundamentally alter the course objectives." **[DKT: 42; Attachment4; Pg. 1; Numeric Lines 1-3]**<br>Transcripts, recordings, Zoom, Teams, a computer or phone, would not alter course objectives as seen in video: Drive **[DKT.152; Differential Equations Introduction Video; 02:24 – 02-46; 06: 42 – 07:20; 08:23 – 08:36; 11: 55 – 13:05]** | Disagree |
| 29. | Dr. Ribble responded to Mr. Rasheed, and stated that the Department of Mathematics and Statistics did not offer any upper division courses required for its degree programs in an online format, but that an individual instructor could permit a student's request to remotely attend a course.<br><br>Ex. D, Rasheed Decl. ¶ 20; Ex. N, MSU034. | Disputed. The email states, "We do not offer any upper division courses needed by math majors as online classes. So, no, neither MTH 3100 nor 3420 are available online in Spring 2023. We also do not have technology in any of our classrooms to record lectures or offer a class in a hybrid or hyflex format." "Thus, even if Drs. McKenna and Harder deem this request reasonable for this one semester, I cannot guarantee that all future instructors would agree. This means that at some point, if not now, she may not be allowed to take a course remotely." **Ex. N, MSU034.** | Disagree |
| 30. | Drs. McKenna and Harder responded to Mr. Rasheed, each stating they would be unable to offer the course in the format requested by Plaintiff. | Disputed. Rasheed sent this email at 11:00 a.m. Professor McKenna responded January 4, 2023 at 23:39 p.m. **[DKT:50; Attachment 1; Pg. 2; Line 21]**. Dr. Harder responded on January 5, 2023 at 2:19 p.m. **[DKT: 50; Attachment 1; Pg. 3; Line 5]** Plaintiff received her denial | Disagree |

| | | | |
|---|---|---|---|
| | Ex. D, Rasheed Decl. ¶ 21; Ex. N, MSU033-MSU-034. | letter from Rasheed on January 4, 2023 at 2:41 p.m. Dr. McKenna said she would not offer her class in remote/hyflex/hybrid, Dr. Harder stated he could not do requested form. | |
| 31. | On January 4, 2023, Mr. Rasheed emailed Plaintiff confirming that MSU Denver could not approve her accommodation request. Mr. Rasheed explained that the accommodation was not reasonable and would fundamentally alter the course objectives. Mr. Rasheed wrote that the Access Center "is willing to review and consider changing our determination based on receiving any additional supporting documentation." Mr. Rasheed also wrote that Plaintiff could appeal the decision and provided instructions on how to do so.<br><br>Ex. H, MSU114; Ex. D, Rasheed Decl. ¶ 23. | Disputed. Rasheed emailed Dr. Ribble on December 20, 2022 stating he was denying Plaintiff's accommodation request prior to receiving the additional documentation sent by Plaintiff on December 27, 2022 and prior to speaking to the professors. **[DKT: 148; Pg. 13]**<br><br>Disputed. Plaintiff was never held to exhaust remedies offered at the university to address her grievance. The Supreme Court holds that private individuals can sue without exhausting offered remedies when intentional discrimination is involved as it is here. https://www.justice.gov/crt/fcs/T6Manual9 . MSU states that students can forego their process to address grievance with the Access Center. https://www.msudenver.edu/access/about-our-office/grievance-complaint-procedures-for-students-with-disabilities/ | Disagree |
| 32. | Plaintiff did not provide Mr. Rasheed with any additional supporting documentation or appeal the decision. Plaintiff filed this lawsuit on March 8, 2023. | Disputed. Rasheed was notified of the letter from Dr. Willson during the tele-meeting on December 20, 2022. That letter was emailed on December 27, 2022. **[DKT: 1, Attachment 6, Line 5]** Disputed. Plaintiff was never held to exhaust remedies offered at the university to address her grievance. The Supreme Court holds that private individuals can sue without exhausting offered remedies when | Disagree |

| | | | |
|---|---|---|---|
| | Ex. F-2, Dixon Tr. Vol. II 27:14-23; 50:6-8.<br>Complaint, ECF No. 1. | intentional discrimination is involved as it is here. https://www.justice.gov/crt/fcs/T6Manual9 . MSU states<br><br>that students can forego their process to address grievance with the Access Center.<br>https://www.msudenver.edu/access/about-our-office/grievance-complaint-procedures-for-students-with-disabilities/ | |