**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-00606-RMR-STV

CESCA DIXON,

Plaintiff,

v.

THE BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER,

Defendant.

---

**Defendant's Reply in Support of Motion for Summary Judgment**

---

In its Motion for Summary Judgment ("Motion"), Defendant demonstrated that it was entitled to judgment as a matter of law on Plaintiff's claims because (1) Plaintiff failed to provide Defendant with the information necessary to approve Plaintiff's request for a remote attendance accommodation; (2) Plaintiff's requested accommodation was not reasonable; (3) Plaintiff's requested accommodation would fundamentally alter Defendant's Mathematics program and courses; and (4) Defendant was not deliberately indifferent to Plaintiff's rights. While Plaintiff did not respond to Defendant's Motion with a traditional pleading, Plaintiff filed responses, including factual and legal assertions, within Defendant's chart of undisputed facts. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF 153 ("Response Chart").

In her Response Chart, Plaintiff asserts that each of Defendant's facts are disputed and immaterial. *See id.* at Nos. 1-32. As outlined below, however, Plaintiff has not actually shown that any genuine factual dispute exists regarding the essential elements of the parties' claims and defenses. *Id.* Simply alleging a dispute of the facts is insufficient to defeat summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

For the reasons stated herein, the Court should grant summary judgment for Defendant on all claims.

## I. Failure to Accommodate/Unreasonable Request

The Response Chart does not evidence any genuine dispute over Plaintiff's failure to provide the documentation reasonably requested by Defendant's Access Center to support her need for a remote attendance accommodation. Plaintiff cites to a letter from provider Tracie Willson, given to Sheriff Rasheed on December 27, 2022, as evidence that she provided the requested documentation. *Id.* at No. 9. However, this letter was not responsive to Rasheed's request that Plaintiff obtain documentation that "states 'if Cesca attends the class, this will be the implication, this will be the impact' … try to be specific why she cannot attend the class physically. That is what we are looking for." *Id.* at No. 7; ECF 143.5 at 3:10-4:24; 10:55–11:40;

ECF 143.4 at ¶ 14.d. Despite Plaintiff's assertion that Willson's letter included the information requested by Rasheed in the December 20, 2022 phone call, this information was wholly deficient to support the accommodation request. Willson's letter simply described Plaintiff's "increased distress" when exposed to "some sounds, lights, and large groups of people[.]" ECF 143.8. This broad language did not identify any limitations specific to in-person attendance and provided no guidance to MSU as to why Plaintiff could not attend her courses in person.

Willson's letter did not include this information because Plaintiff never actually asked Willson to address her limitations. While Plaintiff claims to dispute this fact, *see* Response Chart at No. 10, she has testified that she did not ask Willson to provide a letter explaining why she needed to attend classes remotely. ECF 143.7 at 36:7–37:24; 39:5-40:1. Instead, Plaintiff asked Willson to "state that I was autistic and state that I needed an accommodation. So I'm pretty sure that's all I told her." *Id*. at 36:7–17. Plaintiff's Response Chart points only to her explanation that she told Willson why the meeting was being held. Response Chart at No. 10. Plaintiff does not dispute that she did not explain to Willson the specific information to include in the documentation or what Rasheed had requested. *Id.* at No. 11. Upon reading the letter, Plaintiff did not seek additional information from Willson that would provide the information requested by Rasheed. Despite Rasheed's request just two days prior, and previously providing Rasheed with her Diagnostic Evaluation, Plaintiff testified

that she believed her ASD "diagnosis would be enough[.]" ECF 143.7 at 39:18–21; Response Chart at No. 12.

Similarly, Plaintiff asserts that her "Diagnostic Evaluation states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution." Response Chart at Nos. 12, 14-16. However, the portions of this document to which Plaintiff cites do not state as such. The evaluation cites to Plaintiff's self-reports about maintaining attention levels, and states that "[t]hese problems are probably interfering with academic performance and functioning in other areas." ECF 146 at 9. It also describes Plaintiff's reports of "difficulty with verbal instruction," *Id.* at 3, "a high level of distress associated with attending postsecondary school," *id.* at 10, and "[l]imited ability to meet expectations at work and/or school (did better when things were highly structured; has struggled to turn things in at college)." *Id.* at 6. However, there is no information in the evaluation that states or explains why Plaintiff would have difficulty attending classes in person.

The Response Chart shows there is no factual dispute regarding Defendant's determination that the requested accommodation was not necessary for Plaintiff's equal access to its programs and was therefore unreasonable. As described above, Plaintiff did not provide Rasheed with documentation to support her need for the accommodation, as neither Plaintiff's Diagnostic Evaluation nor Willson's letter explained why such accommodation may be necessary. Despite asserting that a dispute exists, Plaintiff does not genuinely dispute that no medical providers ever

recommended that she attend her courses remotely and has testified to such. Response Chart at No. 15; ECF 143.7 at 18:5–19:5. Further, the determination that Plaintiff's requested accommodation was unreasonable was not made by one individual alone. Before coming to a decision about Plaintiff's request, Rasheed met with his supervisor, Melissa Cermak, who agreed with Rasheed that the request was not supported by the information provided by Plaintiff. ECF 143.4 at ¶ 18; Ex. A, Cermak Decl. at ¶¶ 7-11.

It is undisputed that Rasheed reasonably requested additional information from Plaintiff describing her disability-related need to attend classes remotely. Despite Plaintiff's contention that she complied with Rasheed's request, Plaintiff's testimony of her discussion with Willson and the documentation provided to Rasheed show that she did not. As such, Plaintiff has not created a genuine dispute of fact merely by asserting that she disagrees with Defendant's recitation of undisputed facts as supported by the record.

## II. Fundamental Alteration

The entries in Plaintiff's Response Chart also fail to raise genuine disputes of fact regarding Defendant's fourth affirmative defense: that Plaintiff's accommodation request would have fundamentally altered Defendant's in-person Math courses and degree program. Because Plaintiff has not raised any genuine factual dispute regarding the fundamental alteration her accommodation request would represent for Defendant, the Court should grant summary judgment to Defendants.

In Numbers 18-30 of its Statement of Undisputed Fact chart, Defendant outlines the basis for its fourth affirmative defense: that allowing Plaintiff to attend upper-division math courses remotely would be a fundamental alteration of such courses, as well as the Math degree program. ECF 143.18. In support of this contention, Defendant offers several declarations, including those of the professors from Plaintiff's Spring 2023 in-person courses, Drs. Patricia McKenna and Christopher Harder, as well as that of then-Chair of the Department of Mathematics and Statistics, Dr. Elizabeth Ribble. *See* ECF 143.13; ECF 143.14; ECF 143.12. Although Plaintiff claims to dispute each of these facts, and that none of them are material, her responses fail to raise genuine factual disputes. *See* Response Chart at Nos. 18-30.

For example, MSU does not offer an online math program. *Id.* at No. 19. Plaintiff disputes this fact but does not refer to any support in the record to contradict it. *Id.* Instead, Plaintiff points out several other MSU programs that purportedly offer online degree programs. *Id.* Such information does not create a factual dispute regarding whether MSU offers online Math degrees.

Drs. Ribble, McKenna, and Harder all agreed that in-person instruction is an essential part of Defendant's Math degree program, particularly for the courses Plaintiff sought to take remotely in Spring 2023: Introduction to Mathematical Proofs and Differential Equations. *Id.* at Nos. 20-21, 23. According to McKenna and Harder,

neither course can be reasonably taught with one student attending remotely. *Id.* at Nos. 22, 24.

In response to Defendant's assertion about the necessity of in-person attendance, Plaintiff states that MSU offers other courses and degree programs online, *id.* at No. 22, which does not raise a genuine factual dispute on the material question: whether offering the upper-level Math courses required for Defendant's Math degree program would fundamentally alter those classes or the program as a whole. Plaintiff also points to a video from a Differential Equations course taught during the Fall 2021 semester. *Id.* at Nos. 20, 23-28. This is not evidence of a factual dispute, however, as Defendant has always acknowledged that it was forced to temporarily move to online instruction during the pandemic. *See id.* at No. 25. The video cited by Plaintiff in ECF 153.2 depicts a course taught during one of the last terms in which the Department's online courses were offered after pandemic, ECF 143.12 at ¶ 12, and the course was also taught by a different instructor than Harder or McKenna. While some instructors may have found some benefits of online instruction, this does not change the Department's determination that in-person instruction is essential to its Math program and its required upper-division Math courses. *See id.* at Nos. 18-24.

Plaintiff also attempts to dispute that in-person instruction was an essential component of Introduction to Mathematical Proofs (MTH 3100), as described in Professor McKenna's declaration, by attaching a screenshot of a separate course,

taught by Professor McKenna in an online format. *See id.* at No. 21. Plaintiff asserts this screenshot demonstrates that, in contrast to McKenna's declaration statements about difficulties of replicating elements of in-person instruction during online courses, McKenna was able to communicate with the entire class and provide peer review of student assignments. *Id*. Again, Plaintiff's response does not point to a factual dispute, as Dr. McKenna did not assert that she was unable to speak to all course students at once or provide some approximation of the in-person experience. *Id.* at Nos. 21-22. Rather, Dr. McKenna explained the difficulties she faced while teaching Introduction to Mathematical Proofs virtually, as required by COVID-19, and explained how that experience has informed her preparation of the course for in-person participation. *Id.*; *see also* ECF 143.13 at ¶¶ 10-20.

Further, Plaintiff's insistence that Defendant's ability to teach courses online during the COVID-19 pandemic is evidence that her requested accommodation would not constitute a fundamental alteration is immaterial. *See id.* at No. 21. The ability of postsecondary institutions to continue operations during the pandemic required use of online instruction. This necessity did not change the essential elements of courses or degree programs. Moreover, Plaintiff did not request an accommodation to only take courses that were already offered in an online format; rather, she requested the ability to attend remotely while the instructor and other students attended in person. Plaintiff has not shown any dispute about whether the classes could be taught in such a hybrid context.

Finally, Plaintiff asserts that Defendant's undisputed fact Number 6 in the Response Chart is disputed; however, the substance of Plaintiff's entry for Number 6 does not point to any factual dispute. *See* ECF 153 at No. 6. In Number 6, Defendant asserts that Rasheed told Plaintiff that MSU could not guarantee the accommodation she was requesting would be considered reasonable or that it would not constitute a fundamental alteration to the class. *Id.* Rather than highlight a disputed factual issue, Plaintiff requotes Rasheed with substantially similar language, then asserts the legal conclusion that "access to her upper division courses made accessible by transcripts, recordings, Zoom, Teams, CCTV, or by any means that would permit access" to the classes would not have "altered the integrity of the classes." *Id.* Plaintiff does not cite any factual support in the record to contravene the statements of McKenna, Harder, and Ribble that Plaintiff's accommodation request would represent a disruption to the program. *See id.* at Nos. 20-24, 28. Specifically, that remote attendance by one student would not be reasonable for upper-division Math courses; that in-person instruction is essential for such courses; and that, if granted, Plaintiff's accommodation request would fundamentally alter the Math courses and degree program. *Id.*

## III. Deliberate Indifference

Plaintiff's assertions of factual disputes regarding her deliberate indifference claims are similarly without merit. Plaintiff has not shown the existence of any genuine dispute as to whether her need for a remote attendance accommodation was

plainly obvious. It is undisputed that Plaintiff was able to attend classes in-person between the Fall 2018 and Spring 2020 semesters. ECF 143.6 at 23:22-24:6. Plaintiff testified that none of her providers ever recommended that she attend courses remotely. ECF 143.7 at 18:5–19:5. After reviewing the information provided by Plaintiff, neither Rasheed nor his supervisor could determine that the requested accommodation was necessary for Plaintiff's ability to equally access to Defendant's programs. ECF 143.4 at ¶¶ 16, 18; Ex. A, Cermak Decl. at ¶¶ 8-11.

Similarly, the undisputed facts show that it was not plainly obvious that the accommodation would not have been a fundamental alteration of the Department's program or courses. Plaintiff's Response Chart points to the existence of other online degree programs offered by Defendant and the Department's ability to offer online courses during the COVID-19 pandemic. *See* Response Chart at Nos. 19-25. However, these responses do not refute the fact that Defendant does not offer an online Math degree program, ECF 143.12 at ¶¶ 6-7, or that the Department has determined that in-person instruction is essential to the curriculum of its degree-required courses. *Id.* at ¶¶ 11-12; ECF 143.13 at ¶¶ 12-13, 16; ECF 143.14 at ¶ 14.

Finally, Plaintiff has not pointed to any dispute of fact regarding whether Defendant engaged in an interactive process with her to determine whether to approve the requested accommodation. In addition to email communications, Rasheed met by phone or videoconference with Plaintiff on three separate occasions, once in August 2022 and twice in December 2022, to discuss her request for a remote

attendance accommodation. ECF 143.6 at 62:24-63:23; ECF 143.7 at 8:17-9:5. Plaintiff asserts that any discussion with Rasheed pertaining to the requested accommodation ended after their December 20, 2022 phone meeting because Rasheed emailed Dr. Ribble that same day, stating he was denying the accommodation. *See* Response Chart, Nos. 4, 31. This assertion is a complete misrepresentation of Rasheed's communications with Dr. Ribble. ECF 148 at 13. In the email, Rasheed states that he had met with Plaintiff and her mother, shared with them that the requested accommodation may not be reasonable, and explained that the request could not be granted based upon the information available at that time. *Id.*

This information is precisely what Rasheed shared with Plaintiff and her mother during the December 20, 2022 phone meeting during which Rasheed explained what provider documentation could support Plaintiff's request. *See* ECF 143.5 at 3:10-4:24, 10:00–11:40. Further, Rasheed finished his email to Dr. Ribble by stating, "If there is any change to Cesca's accommodation, then I will communicate that to all her instructors." ECF 148 at 13. Despite Plaintiff's claims that Rasheed had already made his decision, Rasheed's comments to Plaintiff, Plaintiff's mother, and Dr. Ribble show that he was continuing to engage in an interactive process with Plaintiff as to her requested accommodation.

## Conclusion

For the reasons stated above, and for the reasons stated in Defendants' Motion for Summary Judgment, ECF 143, the Court should grant summary judgment for Defendants on all claims.

DATED this 18th day of September 2024.

PHILIP J. WEISER
Attorney General

*/s/ R. Warren Beck*
ANGELA R. ZIPPIN, No. 56719*
R. WARREN BECK, No. 56004*
Assistant Attorneys General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6143; -6395
warren.beck@coag.gov
angela.zippin@coag.gov

**Counsel of Record for Defendant Board of Trustees of Metropolitan State University of Denver*

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing **Defendant's Reply in Support of Motion for Summary Judgment** upon all parties herein by filing copies of same using the ECF System, this 18th day of September 2024 addressed as follows:

Cesca Dixon
1165 South Broadway
Suite 215
Denver, CO 80210

*Plaintiff Pro Se*

*/s/Carmen Van Pelt*
Carmen Van Pelt