IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00606-RMR-TPO

CESCA DIXON,

Plaintiff,

v.

BOARD OF TRUSTEES OF THE METROPOLITAN STATE
UNIVERSITY OF DENVER COLORADO,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Timothy P. O'Hara, United States Magistrate Judge.**

Before the Court is the Parties' respective Motions for Summary Judgment. ECF 135 & 143. The Motions are fully briefed. The Court finds that oral argument will not materially assist in the Motions' adjudication. Based on the Parties' arguments and having reviewed the relevant portions of the record, the Court recommends as follows:

## BACKGROUND

### I. Plaintiff's Claims for Relief

Plaintiff alleges discrimination (deliberate indifference) under Claim 1A and the failure to accommodate under Claim 1B of her First Amended Complaint.[1] ECF 36. She brings both claims under Section 504 of the Rehabilitation Act and Title II of the ADA. ECF 36; ECF 78 at p. 8; ECF

[1] Plaintiff also brought a claim of Intentional Infliction of Emotional Distress, but that claim was dismissed by the Honorable District Judge Regina M. Rodriguez. ECF 86.

135.

At issue is her request to attend two upper-level math courses remotely. The two courses (and indeed the entire math degree program) were designed for the in-person classroom setting. There are no online options. She suggested that her remote attendance could be accomplished through a variety of means such as: CCTV;[2] video teleconference software such as Zoom or Teams; instructional platforms such as Canvas or Blackboard; the professor's computer or cell phone; or by recording or transcripts. ECF 36 at p. 7; ECF 135 at p. 5; ECF 153 at p. 2, n. 6.

## II. The Defendant Party

The case caption for the docket sheet identifies the two entities of "Metropolitan State University of Denver Colorado" and "Board of Trustees of Metropolitan State University of Denver." Defendant explained in a prior filing that the correct defendant entity for this civil action is "Board of Trustees of Metropolitan State University of Denver." ECF 16 at p. 1, n. 1. The briefings of the cross-summary judgment motions refer only to the "Board of Trustees of Metropolitan State University of Denver" entity, as well. The Board of Trustees is also the only party that Plaintiff names as a Defendant in her First Amended Complaint. ECF 36. Therefore, for purposes of this ruling, this Court refers to only one "Defendant" (the Board of Trustees).

## III. Record Review and General Underlying Facts

This Court draws the statement of facts from the various documents submitted into the record; declarations from Defendant's witnesses; and deposition testimony. The statement of facts

---

2 "CCTV" can stand for "closed circuit television", which potentially could be a way to view a class remotely. This Court notes that the Access Center's information sheet—which Plaintiff submits at ECF 30-7—mentions "Assistive technology (e.g. CCTV, screen-reader software)". In that context, "CCTV" may mean closed captioning, which would not facilitate remote attendance.

may be broader than what is dispositive to the elements of Plaintiff's claims for relief. This Court presents this fuller picture to put Plaintiff's claims for relief in context and to provide background.

This Court limits its discussion of the summary judgment analysis to those facts that are material and undisputed.

**A. Plaintiff's First Years at MSU**

At the time the Amended Complaint was filed, Plaintiff was a 23-year-old student. She worked as a live-in aide for her mother, employed in that role by Blue Spruce Home Care. ECF 141 at p. 3 (transcript p. 8); ECF 143-6 at pp. 12-13; ECF 146 at p. 3.

Metropolitan State University (MSU) is a state institution of higher education located in Denver, Colorado. ECF 33 at p. 6. Plaintiff attended MSU from late 2018/early 2019 until Spring 2021. ECF 143-6 at pp. 22-23. Her major was Applied Mathematics. ECF 143-6 at p. 23.

Her classes before the Spring 2020 semester were in person. She attended those classes, but she had difficulty focusing during class. ECF 143-6 at pp. 24, 39. At the time, Plaintiff was unaware that her difficulties were related to ASD. *Id.* at p. 24 ("I didn't think that anything was happening in terms of autism or anything like that. That never crossed my mind . . .")

During the COVID pandemic, from 2020-2021, Defendant offered upper-division math courses online. Plaintiff alleges that she enrolled in one upper-level math course (MTH 3420—Differential Equations) in Spring 2021 as an online class. ECF 1-5; ECF 135-1 at p. 5. However, she "had to drop" from that class. ECF 36 at p. 7.

Plaintiff submits evidence that Defendant offered Differential Equations as an online class in Fall 2021, as well. ECF 152 (which is a flash drive of the class video) and ECF 153 at p. 8, ¶ 20 (where Plaintiff discusses that class video). Defendant explains that this was "one of the last terms

in which the Department's online courses were offered after [the] pandemic." ECF 159 at p. 7. Otherwise, the department generally returned to an in-person format "for all courses after the spring 2021 semester." ECF 143-12 at ¶ 12.

On March 8, 2021, MSU notified the professor of one of Plaintiff's courses (PHY 1000 30180) had been approved for accommodations. ECF 143-11. MSU specifically allowed Plaintiff extra time to take tests as well as to obtain advance copies of the professor's PowerPoint slides for a particular online course. *Id*. At the time, her diagnoses were Post-Traumatic Stress Disorder (PTSD) and generalized anxiety. ECF 143-6 at p. 29. According to Sherrif Rasheed, an Accessibility Coordinator in MSU's Access Center, Plaintiff first reached out in March 2021 because of her difficulties with organization, task prioritization, and timed tests. *Id.* at ¶¶ 4-5. Although Plaintiff had not produced documentation to support her request, she was granted accommodation on a provisional basis for the Spring 2021 semester only. *Id*. at ¶¶ 5-8. The Parties agree that this accommodation was granted provisionally based on a potential Autism diagnosis. ECF 33 at pp. 6-7.

Plaintiff did not attend MSU for the Fall 2021 semester nor in 2022. ECF 153 at p. 1; ECF 119 at p. 1. Instead, she took online classes in 2021 and 2022 at a school in Canada; she lived in Canada at that time. ECF 143-6 at pp. 16-18.

The record suggests that Plaintiff missed the Fall 2022 semester at MSU for a non-medical reason. ECF 30-2 at p. 1 (email from Plaintiff's mother to Chief of Staff Brown stating that Plaintiff had "missed the last semester because [Financial Aid] never notified her of a balance due and would not give her a ledger copy to show the issue.").

### B. Plaintiff Asks to Attend Classes Remotely to Accommodate Her Autism

Plaintiff did not contact the Access Center again until August 4, 2022. She asked for assistance "in getting [her] courses to be purely online to make for a better [environment] for me as someone with Autism Spectrum Disorder (ASD) and to better suit my job at the moment which is a live-in aid to my mother." ECF 143-1 at p. 2. Plaintiff and Mr. Rasheed had a telephonic meeting on August 8, 2022. ECF 33 at p. 7. Mr. Rasheed recalls asking her to submit supporting documentation. ECF 143-4 at ¶ 10. Plaintiff likewise remembers Mr. Rasheed asking for documentation about the new autism diagnosis. ECF 143-6 at pp. 69-70.

The ability to take her classes "online" or "remotely" is the accommodation at issue in this lawsuit. Plaintiff came up with the idea of remote attendance or participation on her own as a way to accommodate her impairments. ECF 143-6 at p. 61. Plaintiff acknowledges that no medical or mental health care provider specifically recommended that she take courses remotely or state that remote attendance is a reasonable accommodation. ECF 143-7 at pp. 16-19; ECF 143-3.

Plaintiff made that request in Fall 2022 in preparation for her return to school for the Spring 2023 semester. Plaintiff was seeking accommodation for the upcoming spring semester as well as for the remainder of her studies. ECF 134 at p. 9.

### C. How the Math Program is Designed

The two classes at issue are MTH 3100 and MTH 3420. This Court notes that by this point, Plaintiff had been enrolled in MSU for two years. ECF 134 at p. 6. The two requested classes were required upper-level math classes for which there was no online version offered. ECF 134 at p. 4.

MTH 3100 is "Introduction to Mathematical Proofs." It is a three-credit course "designed to introduce the student to mathematical proofs and abstract mathematics with topics in logic,

induction, sets, relations, and functions." ECF 42-5. Dr. McKenna is the professor who taught this class for the Spring 2023 semester. In her Declaration (ECF 143-13), Dr. McKenna explains how this subject is taught differently than other math courses (such as calculus) which are predominantly mechanical or procedural. MTH 3100, by contrast, is taught in a more interactive way, with both professor-to-student and student-to-student engagement. A class generally consists of 12 to 15 students. The only time this class was offered online was during the COVID pandemic. Dr. McKenna regarded the online format as inferior in several respects. ECF 143-13 at ¶¶ 12-14. After the pandemic, Dr. McKenna re-organized the course back to the in-person setting. *Id.* at ¶¶ 15-16. To permit virtual attendance afterwards would have required significant preparation on her part, "and would necessitate creating new, separate testing materials . . . to account for [the virtual students'] increased access to outside resources." *Id.* at ¶ 16.

MTH 3420 is "Differential Equations" (and is the course in which Plaintiff previously had enrolled when it was offered online). It is a four-credit hour course covering "first, second, and higher order differential equations and systems giving solutions in closed form, by numerical approximations, and through Laplace Transforms. These techniques are applied to problems in the physical sciences and engineering." In addition, the software package, Mathematica, is integrated into the course. ECF 42-5. Dr. Harder is the professor who taught this class for the Spring 2023 semester. This course "is largely theoretical, as well as mechanical", Dr. Harder explained in his Declaration, and "student discussion and engagement are vital to the learning environment." ECF 143-14 at ¶ 11. Dr. Harder describes an interactive approach to how students learn the material, and how he "frequently write[s] on the whiteboard as an instructional tool." ECF 143-14 at ¶¶ 12-13. Learning "is assessed predominantly through test-taking", and "tests must be proctored in-

person" "[t]o ensure the security and integrity of the assessments". ECF 143-14 at ¶ 15.

At the time, Dr. Ribble was the chairperson of MSU's Mathematics and Statistics Department. Dr. Ribble describes how the department structures its upper-level, degree-track courses for in-person participation. Only one upper-level class is offered as an online course, but it is not required for a degree. Following the Spring 2021 semester, the department requires in-person, proctored test-taking for all courses, including online courses. This was in response to the department's experience during the COVID pandemic during which courses were offered in an online format. "The Department's faculty", she explains, "generally found remote instruction to be an ineffective method for teaching and learning mathematics." ECF 143-12 at ¶ 11. Faculty concerns about the online format that Dr. Ribble identified were "lack of student engagement during class sessions; barriers to personalized interactions with students (e.g., recognizing individual[] students struggling with the material); significant increase in academic dishonesty/cheating on tests and assignments; and increased workload as a result of converting course materials to digital format." ECF 143-12 at ¶ 11.

In other words, "[t]he Department's faculty generally found remote instruction to be an ineffective method for teaching and learning mathematics. In contrast, the in-person classroom setting allows professors "to engage students with the material or gauge student mastery of the material." ECF 143-12 at ¶ 26. The Department also wants "students to build community and obtain peer support to academically progress and complete their degree programs," a dynamic which is "difficult to replicate virtually." *Id*. at ¶ 13.

Dr. Ribble explained that the shortcomings of remote instruction would be greater still "if one student was attempting to attend remotely, while the rest of the class was engaged in-person

in the classroom." Dr. Ribble opined that a remote accommodation "would have substantially altered the degree program." ECF 143-12 at ¶ 26. In addition, the remote student would be progressing through the degree program without "completing the in-person components" and without "demonstrating engagement and mastery of the materials through in-person participation" as the other students. *Id.* at ¶ 27. "A person attending all in-person courses online would not be receiving the same comparable education or degree as those completing the degree as designed." *Id.*

**D. MSU Considers Her Remote Accommodation Request**

On August 16, 2022, Plaintiff was "self-referred" for a "comprehensive evaluation for possible Autism Spectrum Disorder (ASD)." ECF 146 at p. 1. Four mental health care providers at Colorado Assessment and Therapy, PC, conducted that examination. The examiners diagnosed "Autism Spectrum Disorder, Level 1, without cognitive or language impairment" and "Social Anxiety Disorder." *Id.* at p. 1. The examiners added that Plaintiff's previous diagnoses of Post-Traumatic Stress Disorder and Unspecified Depressive Disorder (for which Plaintiff had received treatment at the same clinic earlier in 2019), remain valid. *Id.* at pp. 1, 20. This Court notes that Plaintiff did not report having the kind of difficulties at school (such as difficulties being in the classroom setting or concentrating during in-class instruction that are at issue in this lawsuit).[3] She described social anxieties and social interaction difficulties generally, but not in specific reference to the classroom. Nor does the report specifically identify the particular impairments for which she now seeks accommodation. The examiners stated that the ASD diagnosis brings Plaintiff within

[3] Plaintiff did report "difficulty sustaining focus when not interested in the subject." ECF 146 at p. 3.

the scope of the Rehabilitation Act. *Id.* at p. 21. However, as it was the first time the group analyzed Plaintiff, there were details that remained unclear about her condition.[4] They did not specify any particular kind of school-related impairment. Also, they did not recommend any particular school-related accommodation. Rather, they generally advised Plaintiff to share the evaluation results with MSU "to determine what services, supports, and accommodations she may qualify for." *Id*. at p. 21.

Plaintiff sent the diagnostic evaluation report to Mr. Rasheed on September 2, 2022. ECF 1-1; ECF 143-4 at ¶ 11. Plaintiff sent Mr. Rasheed another email on November 30, 2022 asking to take all of her classes for the upcoming semester "completely online." ECF 1-1; ECF 143-4 at ¶ 12.

Mr. Rasheed met with Plaintiff on December 19, 2022. According to Mr. Rasheed, he explained to Plaintiff that her request to take the math classes online was not reasonable because "in-person courses were typically designed and designated to be taken in-person". ECF 143-4 at ¶ 13. Mr. Rasheed says that he suggested that she ask her academic advisor about online course availability or take online equivalent courses at another school for credit transfer. ECF 143-4 at ¶ 13. Mr. Rasheed adds that he did not read the diagnostic evaluation report as setting forth "any recommendations regarding accommodations." ECF 143-4 at ¶ 11.

On December 19, 2022, Plaintiff emailed her academic advisor to ask if it was possible to attend her math courses virtually. She provided two reasons: to accommodate her ASD and because of her mother's compromised immune system. She clarified that she did not want the

---

4 For example, the evaluators stated that it is "strongly recommended that [Plaintiff] be evaluated for a diagnosis of Attention-Deficit/Hyperactivity Disorder." ECF 146 at p. 21.

classes converted to an online format but rather to "join a session with my professors and just simply be propped up in the class" (by which to remote in). Plaintiff reported that the Access Center had said it was unable to help but advised her to ask her academic advisor for any recommendations. ECF 1-2 and 1-3.

Plaintiff's academic advisor forwarded Plaintiff's inquiry to Dr. Elizabeth Ribble. ECF 143-10. On December 19, 2022, Dr. Ribble answered Plaintiff's inquiry. ECF 1-4. Dr. Ribble repeated the academic advisor's suggestion that Plaintiff ask the professors for permission to attend remotely. (This Court construes this to mean that the professors on their own initiative might provide some sort of accommodation informally.[5]) Dr. Ribble cautioned Plaintiff that even if the professors gave informal permission to participate in class remotely, she still must take the exams in person. Dr. Ribble added that the "department does not assess the need for student accommodations. The Access Center is the only unit at MSU Denver that can determine what reasonable accommodations need to be made for a given student." ECF 1-4.

"Ultimately," Dr. Ribble furthered, "if you need to take all of your math classes remotely, our math major may not be the program for you. We do not offer any of our upper division math classes online, and unfortunately, I cannot guarantee that any or every instructor will allow an individual student to participate remotely." ECF 1-4.

Plaintiff initially responded positively to Dr. Ribble's email. ECF 1-10. Soon thereafter, however, Plaintiff and her mother wrote Dr. Ribble to complain about the comment that "our math

[5] This is also how Dr. Ribble, herself, describes it. As she recalls, she suggested to Plaintiff that she "first reach out to [the two professors] to see if they would allow her to attend remotely informally." ECF 143-12 at ¶ 18.

major may not be the program for you" as well as about the denial of her accommodation request. ECF 1-11; ECF 30-4. Plaintiff's mother emailed MSU's president (President Davidson) and MSU's Chief of Staff, Edward Brown,[6] about the matter. ECF 30-2 at pp. 1-6. In one such email, Plaintiff's mother emphasized that the onus of the decision and ADA compliance "should not be put . . . in the hands of professors because they may make a mistake [for which the school could be sued]." ECF 30-2 at p. 3.

Plaintiff did not consult with the professors who taught the two classes. ECF 143-7 at p. 63.

On December 20, 2022, Plaintiff and Plaintiff's mother spoke with Mr. Rasheed. This was a follow-up to Plaintiff's conversation with Mr. Rasheed the day before. Plaintiff provides a transcript[7] of that December 20, 2022 telephone call at ECF 134.

During that December 20, 2022, call, Plaintiff's mother explained that Plaintiff cannot concentrate in the classroom because of social anxiety. ECF 134 at pp. 2-5, 8. Her mother added that because she has an autoimmune disease, an infection could endanger her life. Because Plaintiff is her caregiver, Plaintiff must avoid the risk of transmitting a flu or COVID infection to her. *Id.* at p. 5.[8] Plaintiff was not asking for an online class, she clarified. Rather, she was asking "if the professor or somebody can record the class and just e-mail it to her" or "just get the transcript of

---

6 Mr. Brown's Declaration is found in the record at ECF 143-17.

7 Plaintiff recorded that call, and she used a computer program to transcribe it. ECF 143-6 at p. 65; ECF 143-7 at pp. 9-10. Defendant submits the audio recording into the record. *See* ECF 143-5.

8 Plaintiff clarified at her deposition that while she included it as part of her request, her mother's medical condition is not the primary reason for the requested accommodation. ECF 143-6 at pp. 55-56.

the class" and not be counted as absent. *Id*. at p. 2. Or, likewise, if someone could set up a laptop so that Plaintiff could watch class via Teams. *Id*. at p. 13.

One option that Mr. Rasheed had suggested was for Plaintiff to speak directly with the instructor about what arrangements could be made. ECF 134 at p. 4. Otherwise, the Access Center was responsible for making the accommodation determination. Mr. Rasheed explained that "departments and professors are not supposed to address the issue of [Plaintiff's] disability." *Id*. at p. 11. Rather, the school determines the accommodation and directs the professor to provide it. *Id*. at p. 14.

Mr. Rasheed asked for "documentation that would justify the need for [the] particular accommodation" at issue. ECF 134 at p. 3. He advised Plaintiff to obtain from her mental health care provider a letter specifically identifying what the mental health impact is from in-person class attendance and to be specific about why Plaintiff cannot attend class. *Id*. at pp. 8-9, 14. With that information, Mr. Rasheed then could consult with colleagues, the math department, and others about all potential options and how to proceed. *Id*. at pp. 9-10, 12. The Access Center must determine what accommodation is needed and then whether that needed accommodation is something MSU can provide without fundamentally altering the class. *Id*. at pp. 8, 13. Another option to explore would be alternative online classes. *Id*. at p. 9.

Plaintiff confirms that Mr. Rasheed requested extra documentation to support the requested remote attendance accommodation. He asked for "documentation that stated what the impact of attending class in person would be." ECF 143-7 at p. 14. He wanted documentation to show specifically why she cannot attend class in person. *Id*. at pp. 38-39.

Plaintiff was seeing a therapist at the time. However, Plaintiff did not ask her therapist for the requested documentation. Rather, she went to Tracie Willson, a Psychiatric Mental Health Nurse Practitioner. *Id*. at p. 26. She explained the situation to Ms. Willson about her request for the school to provide a remote accommodation. *Id*. at p. 37. Plaintiff asked Ms. Willson to explain that she is autistic and needs an accommodation at school. However, Plaintiff did not ask Ms. Willson to say anything specific or to address remote accommodation specifically. *Id*. at pp. 27, 37, 39. Plaintiff had begun seeing Ms. Willson before her ASD diagnosis, originally for panic attacks. *Id*. at p. 28.

Ms. Willson wrote a letter on December 23, 2022. ECF 42-2. Ms. Willson reported that she has been treating Plaintiff for Autism Spectrum Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder since August 22, 2022. *Id.* Plaintiff "experiences increased distress when exposed to some sounds, lights, and large groups of people" and that such distress in turn "inhibit[s] her ability to focus and properly absorb information." *Id.* Although Ms. Willson stated that "[s]pecific accommodations may be requested by [Plaintiff] in order to promote a positive learning environment," she did not expressly identify what those specific accommodations should be. Ms. Willson did not go so far as to say that Plaintiff has difficulties in the classroom setting or that she cannot only attend class remotely. However, Ms. Willson did reference "a 504 plan from previous educational institutes" which she believed to exist as well as a "full neuropsychiatric testing report" which could provide additional information. *Id.*

Plaintiff submitted Ms. Willson's letter to Mr. Rasheed on December 27, 2022. ECF 1-6.

In his Declaration, Mr. Rasheed states that he did not regard Ms. Willson's letter as supporting the particular accommodation that Plaintiff was requesting. As he read her letter, Ms.

Willson "did not explain the impact attending in-person courses would have on Ms. Dixon or explain the limitations Ms. Dixon would face by attending in-person courses. Ms. Willson's letter also did not include a recommendation that Ms. Dixon attend her courses remotely." ECF 143-4 at ¶ 16.

According to Dr. Ribble, Mr. Rasheed contacted her on December 20, 2022, about Plaintiff's remote attendance accommodation request. ECF 143-12 at ¶ 23; ECF 143-15 at p. 3. Mr. Rasheed's email is found in the record at page 13 of ECF 148. Mr. Rasheed informed Dr. Ribble about his recent discussion with Plaintiff and her mother concerning "her request to have her math classes taught virtually." As he recalled their discussion, he informed Plaintiff that the "request might not be reasonable, as classes are taught either virtually or in person for reasons." Mr. Rasheed told Plaintiff "that based on the available disability information," he "could not grant the requested accommodation at this time." However, he was "happy to consider any additional documentation [Plaintiff] can provide."

Mr. Rasheed contacted Dr. Ribble again on January 4, 2023, as well as the two professors of the specific classes. ECF 143-15 at p. 3. Mr. Rasheed explained that Plaintiff wanted to take the two courses "remotely or have the classes recorded and shared with her." He considered the request to be "a high-level accommodation that" he could not approve without first consulting them. As part of his "due diligence to explore any possibilities/options," he wanted to know whether the request was reasonable, and "if there are any suggestions" that he could share with Plaintiff. *Id.* at p. 3.

Dr. Ribble answered that her department does "not offer any upper division courses needed by math majors as online classes.". *Id.* at p. 2 (emphasis in the original). Dr. Ribble explained that

the "math major program is an in-person program that is not available to remote or online students." Dr. Ribble doubted that Plaintiff would be able to secure accommodations in an informal, ad hoc way from every professor for every course needed to complete her major in mathematics.[9] Dr. Ribble added that the department's classrooms lack the technology "to record lectures or offer a class in a hybrid or hyflex format." *Id*. at p. 2.

Dr. McKenna responded that she "will not be able to offer MTH 3100 in any version of a remote/hybrid/hyflex form." *Id*. Dr. McKenna suggested that Plaintiff could take an equivalent online course at another institution and transfer in the credit hours, although that "would not solve the problem of further coursework requiring the student to come to campus". *Id*.

In her Declaration, Dr. McKenna explains the reason for her answer. She based her determination on her "experience teaching the class in a fully remote format in 2020 and 2021, the course learning objectives, and the format planned for the 2023 semester course." ECF 143-13 at ¶ 19. Dr. McKenna considers "[f]ully remote instruction [as] a less effective method for students to learn the course material and for an instructor to assess student learning," and a "hybrid version of the course, involving both in-person and remote attendance, would require a significant reformatting of tests and in-class activities planned for the 2023 semester course." *Id*. at ¶ 19.

Dr. Harder answered Mr. Rasheed that he likewise "will also not be able to offer MTH 3420 in the requested form." ECF 143-15 at p. 1. Dr. Harder explains in his Declaration that the MTH 3420—Differential Equations course is offered only in-person and was organized as such.

---

[9] She explained to Mr. Rasheed that "even if Drs. McKenna and Harder deem this request reasonable for this one semester, I cannot guarantee that all future instructors would agree. This means that at some point, if not now, she may not be allowed to take a course remotely." ECF 143-15 at p. 2.

ECF 143-14 at ¶¶ 14, 16. "To prepare a course in which one student attends virtually, while all other students attend in-person would require either the creation of a new section of the course, or allowing one student to receive a deficient educational experiences." *Id*. at ¶ 17.

In his Declaration, Mr. Rasheed states that he consulted with Melissa Cermak, Ph.D., who is the Associate Director of the Access Center and his supervisor, about Plaintiff's request. ECF 143-4 at ¶ 18. Plaintiff disputed as hearsay Mr. Rasheed's statement that Dr. Cermak agreed with his determination to deny Plaintiff's request. ECF 153 at p. 7. Defendant attaches to its Reply (ECF 159) Dr. Cermak's Declaration (ECF 159-1), thereby submitting into the record Dr. Cermak's own testimony.

**E. MSU Denies Plaintiff's Request**

Mr. Rasheed wrote Plaintiff on January 4, 2023, with the Access Center's accommodation determination. ECF 42-4. The Access Center denied Plaintiff's request to take the on-campus classes (MTH 3100 and MTH 3420) remotely or to have her professors record the classes and share the recordings with her. Mr. Rasheed reported that he had communicated with her professors and the math department chairperson. "[T]hey clearly stated that they do not offer any upper division courses needed by math majors as online classes because [the] math major program is an in-person program that is not available to remote or online students." Mr. Rasheed added that "[t]he department do[es] not have technology in any of their classrooms to record lectures or offer a class in a hybrid or hyflex format." Mr. Rasheed stated that "[a]ny approved accommodations must be reasonable and must not fundamentally alter the course objectives." ECF 42-4.

Mr. Rasheed concluded the January 4, 2023, accommodation determination letter by informing Plaintiff of the option to appeal. For how to make that appeal, Mr. Rasheed referred

Plaintiff to the ADA Student Grievance Procedure (along with a hyperlink to it). The Access Center also offered to review the determination "based on receiving any additional supporting documentation." ECF 42-4.

In her Declaration, Dr. Cermak explains that the ADA Student Grievance Procedure is Defendant's "process for addressing student complaints regarding discrimination based on disability. The process may be used by a student who believes they have been denied an accommodation required by law." ECF 159-1 at ¶ 14. The ADA Student Grievance Procedure gives a student two appeal options. There is an informal process which consists of a meeting with the Access Center Director to review any relevant information to make a determination. The formal process involves the student filing a grievance with Defendant's Office of Equal Opportunity, which then reviews the grievance pursuant to its own policies and procedures. ECF 159-1 at ¶ 15.

Plaintiff did not[10] appeal the denial through the ADA Student Grievance Procedure. ECF 143-7 at p. 50.

Plaintiff's mother complained to the Chief of Staff, Mr. Brown, and they exchanged emails between December 19, 2022, and January 9, 2023. ECF 30-2 at pp. 1-6; ECF 143-17 at ¶¶ 5-9. Mr. Brown discussed the denial of Plaintiff's request for a remote attendance accommodation with Mr. Rasheed and Dr. Cermak on January 17, 2023. ECF 143-17 at ¶ 10; ECF 159-1 at ¶ 16. Defendant concedes that Mr. Brown did not communicate with Plaintiff or her mother after that meeting. ECF 143 at p. 20.

Plaintiff filed this civil action on March 8, 2023. ECF 1.

[10] Defendant raises no argument about whether Plaintiff had an obligation to administratively exhaust her request using the proper administrative appeals process in order to preserve her ADA/Rehabilitation Act disability discrimination claims.

### F. Plaintiff Remains at MSU

On March 31, 2023, Plaintiff submitted a Study Abroad Financial Aid Worksheet and inquired about studying in the U.K. She did not have the intention of attending those classes in person. ECF 143-7 at pp. 55-61.

On May 10, 2023, the Access Center declined Plaintiff's request for additional time to take a final examination because she had not renewed her accommodations request for the Spring 2023 semester. ECF 119-2.

Plaintiff unenrolled from the two math classes for the Spring 2023 semester. ECF 36 at p. 8, ¶ 6. However, she continued to take classes at MSU in 2023 and 2024. Those classes are not related to her Applied Mathematics major. ECF 143-7 at pp. 83-84.

Plaintiff alleges that her grades greatly improved for the Spring and Fall semesters of 2023 during which time she took online classes. ECF 135-1 at p. 5. *See also* ECF 153 at p. 1 (in which Plaintiff states that she attended MSU for "all of 2023") and ECF 143-6 at p. 46 (in which Plaintiff states that she took online classes in 2023). The only one of those classes that related to her degree was Intro to Statistics. ECF 135-1 at p. 5.

Plaintiff asserts that for the Spring 2024 semester, the math department added an in-person proctored test requirement for all online math classes. ECF 135-1 at p. 5 and ECF 153 at p. 2 (citing ECF 123). Plaintiff alleges that the addition of the in-person testing requirement "depressed [her] to the point of having to pursue Administrative Withdrawal due to Mental Health for the entire Spring 2024 Semester." ECF 135-1 at p. 5; ECF 153 at p. 1. In support of that allegation,[11]

[11] The documentary record does suggest that Plaintiff (1) had an increase in mental health symptoms in Spring 2024 and (2) did not complete that semester at school. However, the documentary record does not expressly confirm her allegation that the new in-person testing

Plaintiff cites to a letter written by Danielle Rabinovich, LPC, BCN on May 1, 2024 (and found in the record at ECF 120-2). She also cites to her MSU transcript (found in the record at ECF 119 at p. 1) which shows no grades given or credit hours posted for the Spring 2024 semester.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 56(c)

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). "Summary judgment is not a disfavored procedural shortcut. Instead, it is an important procedure designed to secure the just, speedy and inexpensive determination of every action." *Evans v. Cawthorn*, No. 16-3095-DDC-ADM, 2019 WL 5787952, at *3 (D. Kan. Sept. 6, 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th

requirement for online math classes is what caused her mental health to worsen.

Cir. 2002).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party must assert a set of facts that, if could be found to be true, would enable it to prevail on the claim. To meet that burden, the opposing party may not rest on the allegations contained in the complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). In other words, the opposing party must do more than make a conclusory denial of an asserted material fact. Instead, it must provide an explanation for the denial with an accompanying specific reference to the evidentiary record. *American Auto. Ins. Co. v. Marlow*, 666 F. Supp. 2d 1209, 1212 (D. Colo. 2009). If the parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, the court should not adopt that version. *Pierson v. Bassett*, 534 F. App'x. 768, 771 (10th Cir. 2013).

"[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws

all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II. Governing Disability Law

Plaintiff's claims for relief are based on two federal statutes. Pursuant to Section 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability" "shall . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" "solely by reason of her . . . disability". 29 U.S.C. § 794(a). Pursuant to Title II of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a). As Federal regulations summarize disability discrimination law, "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a).

The Tenth Circuit interprets and treats Title II of the ADA and Section 504 of the Rehabilitation Act in a similar way in the higher education context. *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 919 (10th Cir. 2013), *Doe v. Okla. City Univ.*, 406 F. App'x 248, 250-51 (10th Cir. 2010). As such, case law that interprets the Rehabilitation Act can be used to interpret the ADA. In addition, case law from the Title I ADA employment context can be applied to the Title II ADA educational context. *McGuinness v. Univ. of N.M. Sch. of Medicine*, 170 F.3d 974, 978 (10th Cir. 1998)*; see also*, *Profita v. Regents of the Univ. of Colo*., 709 F. App'x 917 (10th Cir. 2017); *Crane v. Utah Dep't. of Corrs.*, 15 F.4th 1296, 1314 (10th Cir. 2021)).

For present purposes this Court assumes that both statutes cover Defendant. Likewise, this Court assumes that Plaintiff's ASD and social anxiety meets the statutes' definition of disability.[12]

## ANALYSIS

In the cross-motion situation—when both sides move for summary judgment—a court considers each motion separately pursuant to the same above standard. The denial of one summary judgment motion does not require granting the other one. *Lumen Techs. Serv. Grp., LLC v. CEC Grp., LLC*, No. 23-cv-00253-NYW-KAS, 2024 WL 4753723, at *2 (D. Colo. Nov. 12, 2024). This Court considers each side's summary judgment motion in turn below.

### I. Defendant's Motion for Summary Judgment

For Defendant to prevail on its summary judgment motion, Defendant need not necessarily disprove Plaintiff's claims. Rather, Defendant must convince this Court that Plaintiff lacks evidence by which to prove any essential element of her claims (and show that Defendant is otherwise entitled to judgment as a matter of law). *See* Fed. R. Civ. P. 56(a). Defendant meets "its initial burden either by producing affirmative evidence negating an essential element of [Plaintiff's] claim, or by showing that [Plaintiff] does not have enough evidence to carry [her] burden of persuasion at trial." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). If Defendant does so, then the burden shifts to Plaintiff to "point to 'significantly probative' evidence that could support a judgment." *Smith v. Williams*, 2024 WL 5153996, at *2 (10th Cir. 2024). If after

---

12 The ADA defines "disability" in part as a "mental impairment that substantially limits one or more major life activities". 42 U.S.C. § 12102(1). Learning counts as a major life activity. 42 U.S.C. § 12102(2)(A). *See also Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1194 (10th Cir. 2007) (discussing what the ADA means by the kind of substantial impairment needed to establish this element of the cause of action). Defendant does not contest that Plaintiff is a qualified individual with a disability.

resolving all doubts and reasonable inferences in Plaintiff's favor, a claim lacks evidentiary support, then there is no reason to allow the claim to move forward.

### A. Failure to Accommodate

To prevail on her failure-to-accommodate claim, Plaintiff must prove that: (1) she is disabled as the statutes define that term, (2) she was otherwise qualified academically,[13] (3) she requested a plausibly reasonable accommodation, and (4) Defendant refused an accommodation for her disability. *Dixon v. Bd. of Trs.*, No. 23-cv-00606-RMR-STV, 2023 WL 11862296, at *4 (D. Colo. Oct. 27, 2023) (citing *Griego v. Kohl's, Inc.*, No. 21-cv-00045-RM-NYW, 2021 WL 4947286 (D. Colo. Sept. 27, 2021)). In the university context of Title III of the ADA, the last two elements are combined as: Defendant "failed to make reasonable modifications which would accommodate her disability without fundamentally altering the nature of its services." *Borwick v. Univ. of Denver, Bd. of Trustees*, No. 11-cv-01216-MSK-KMT, 2013 WL 1149543, at *6 (D. Colo. Mar. 18, 2013).

#### 1. Plaintiff Must Support Her Request

The nature of a failure-to-accommodate claim is an omission, not an action. The theory is that a defendant discriminates against a disabled person "by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations". *Griego*, 2021 WL 4947286 at *4. Importantly, this duty arises "once the [defendant] had <u>notice</u> of those required accommodations." *Id*. (emphasis added).

[13] Defendant does not directly raise an argument for summary judgment on this element. This Court notes the general rule that "[a]n individual is 'otherwise qualified academically' if she can meet all of a program's requirements, in spite of a disability, with or without reasonable accommodation." *Borwick*, 2013 WL 1149543 at *6 (internal citation omitted).

Both Plaintiff and Defendant had a general obligation to engage in an interactive, bilateral process by which to determine the precise limitations from Plaintiff's ASD and social anxiety and to fashion a reasonable accommodation to overcome those limitations. *Hurt v. Sch. Dist. No. 1*, 664 F.Supp.3d 1227, 1238 (10th Cir. 2023) (citing 29 C.F.R. § 1630.2(o)(3))*; see also*, *Griego*, 2021 WL 4947286 at *5. A plaintiff's failure to provide sufficient documentation for the requested accommodation can prove fatal to the claim. *Hurt*, 664 F. Supp. 3d at 1240; *Steffes v. Stepan Co.*, 144 F.3d 1070, 1072 (7th Cir. 1998) (plaintiff's failure to provide adequate information made plaintiff "responsible for the breakdown in the interactive process.")

It is undisputed that the Parties did engage in an interactive process. Sheriff Rasheed, an Accessibility Coordinator at Defendant's Access Center, worked on this particular accommodation request from August 8 to January 4, 2023. The record contains email correspondence on this matter as well as a transcript of one particular telephonic meeting. Both Plaintiff and Mr. Rasheed describe ongoing discussions. ECF 1-1; ECF 33 at p. 7; ECF 134; ECF 143-4; ECF 143-6 at pp. 69-70; ECF 143-7 at pp. 14, 38-39; ECF 143-15.

Defendant was justified to ask for supporting documentation. First, Defendant is not required to accommodate the diagnosis but rather the limitation. *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1197 (10th Cir. 2007). The focus of inquiry is how to accommodate the way in which the underlying medical condition restricts Plaintiff's access to the two enrolled courses. Second, Plaintiff's social anxiety and Level 1 ASD diagnoses did not make obvious that Plaintiff only can participate in these courses remotely. The mere fact that a student has social anxiety and Level 1 ASD does not necessarily mean that the student has no capacity to attend any class in person. Because the need for accommodation was not obvious, Plaintiff had an obligation

to make a request for it and provide adequate support for it. For the interactive process to work, Plaintiff must inform Defendant of the nature of her impairment. Defendant "cannot be expected to propose reasonable accommodation absent critical information [from Plaintiff about her] medical condition and the limitations it imposes." *Hurt*, 664 F.Supp.3d at 1238 (citing *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617 (10th Cir. 1998)). The law does not obligate Defendant simply to accept Plaintiff's assertion of having an impairing mental health condition and to provide her proposed accommodation as is.

Plaintiff argues that neither the law nor Defendant's own policy requires a treating doctor's specific recommendation in order to obtain an accommodation.[14] ECF 153 at pp. 4-5. That is not the dispositive point, however. The issue instead is that a specific explanation from a medical treating source is helpful and informative to the process. By providing documentation of the diagnoses only—without an accompanying doctor's explanation of how the mental health condition impacts her ability to be in a classroom either for instruction or testing—Plaintiff left the situation ambiguous and failed to provide adequate support for the suggested accommodation. Adding to the ambiguity was the fact that Plaintiff already was half-way through her four-year university degree and never requested such an accommodation previously.[15] ECF 119 at pp. 1-2; ECF 134 at p. 6; ECF 143-6 at pp. 24, 39; ECF 153 at p. 1. It is true that not all of those classes were in-person. She took several classes online either because of the COVID pandemic or for

---

[14] This Court notes that in order to prevail on her claim, Plaintiff has the burden of proving that she has a mental health condition that substantially limits a major life activity. 42 U.S.C. § 12102(1).

[15] Plaintiff also acknowledged that schools typically do not offer math classes online, unless for the schools "you see in commercials about 'get your degree online.'" ECF 143-6 at p. 18.

reasons not directly related to her mental health condition. ECF 143-6 at pp. 17-18. Plaintiff's situation may differ from the one in *Cunningham* in which the student requested a test-taking accommodation for a board examination after he already had passed numerous medical school classes and tests. 531 F. App'x at 920. Plaintiff nonetheless was seeking a substantial accommodation half-way through her four-year degree. There still was enough ambiguity to affect Defendant's ability to understand the nature and precise extent of her impairment in a way similar to what the *Hurt* court addressed. In such an unclear situation, the lack of supporting documentation can defeat a failure-to-accommodate claim. *Hurt*, 664 F.Supp.3d at 1239-40.

It is undisputed that Mr. Rasheed was Defendant's representative at the Access Center responsible for handling Plaintiff's matter. It is undisputed that Mr. Rasheed specifically explained the need for supporting documentation. Mr. Rasheed asked Plaintiff to submit information from a medical provider about her need for the remote accommodation. That documentation should address what impact attending an in-person class would have on her. Mr. Rasheed was advising Plaintiff what information would <u>help support</u> her request. That was the focus of the conversation on December 20, 2022, which Plaintiff recorded and transcribed. ECF 134. Plaintiff answered that she would be seeing a mental health care provider soon for that very purpose. ECF 134 at pp. 4, 10, 14. Plaintiff acknowledges that this is the kind of information that Mr. Rasheed was requesting. ECF 143-7 at pp. 14, 38-39.

Mr. Rasheed then reviewed the documents that Plaintiff submitted—the diagnostic evaluation report and Ms. Willson's letter—but he did not regard them as substantiating Plaintiff's request for remote attendance. ECF 143-4 at ¶¶ 11, 16. Plaintiff concedes that nothing of those two records directly and expressly says that she cannot attend in-person classes and only can participate

in class remotely. ECF 143-7 at pp. 16-19; ECF 143-3.

In response, Plaintiff argues that the diagnostic evaluation "states her exact limitations within a physical classroom setting, particularly at a postsecondary educational institution." ECF 153 at pp. 4, 6. This Court disagrees that the diagnostic evaluation goes so far. The most relevant parts note Plaintiff's subjective reports of "difficulty with verbal instruction"; "[l]imited ability to meet expectations at work and/or school (did better when things were highly structured; has struggled to turn things in at college)"; and "a high level of distress associated with attending postsecondary school". ECF 146 at pp. 3, 6, 10. Plaintiff emphasizes how Ms. Willson identified "some sounds, lights, and large groups of people" as factors that cause her distress and that distress in turn generally impacts her ability to focus and properly absorb information. ECF 153 at p. 3. Plaintiff's argument is correct only to the extent that Ms. Willson's letter (ECF 42-2) identifies those as her impairments. Ms. Willson does not expressly say that those stressors are present in the type of small, upper-level math class for which Plaintiff sought an accommodation. Ms. Willson does not expressly advise that Plaintiff (1) should not be in a classroom or take a test in person or (2) only can participate in a class or take a test remotely because of those impairments. Ms. Willson suggests no specific accommodation at all. Consequently, this Court does not agree with Plaintiff's argument (ECF 153 at p. 3) that Ms. Willson's letter provided the accommodation information that Mr. Rasheed had requested. This Court finds that Ms. Willson's letter did not "detail[ ] why in-person classes are not suited for the Plaintiff and the manifestations of her Autism." ECF 135 at p. 5.

While there is some ambiguity over the extent to which the documentation played a role in Defendant's decision, the evidence makes clear that it did play some role. It was part of the Parties'

interactive process. It was the focus of their discussion on December 20, 2022, for example. As this Court notes above: Mr. Rasheed requested supporting documentation; Plaintiff understood the request; and Plaintiff actually did gather and submit documentation in response to Mr. Rasheed's inquiries. However, that information was silent as to the crucial issue of whether Plaintiff's request for accommodation was supported by anyone other than her. And Plaintiff failed to even contact the two teachers of the classes to obtain their thoughts on the issue.

Mr. Rasheed states in his Declaration that he did not regard Ms. Willson's letter as justifying the remote accommodation that Plaintiff was requesting. ECF 143-4 at ¶ 16. Mr. Rasheed's supervisor, Dr. Cermak, agrees in her Declaration (ECF 159-1) that the two submitted records provide insufficient support. ECF 159-1. This Court agrees. Plaintiff's failure to provide responsive information to justify the requested accommodation constituted a failure to hold up her end of the interactive process and justifies granting summary judgment in favor of Defendant.[16] *See Hurt*, 664 F.Supp.3d at 1240; *see also Steffes*, 144 F.3d at 1073. Even though this finding would be sufficient to grant Defendant's Motion, additional grounds exist that support summary judgment in its favor.

**2. A Reasonable Accommodation**

The law does not obligate Defendant to fulfill all accommodation requests. Nor does the law place on Defendant a limitless burden to make a particular accommodation happen. Defendant is not obligated to provide an accommodation that is "substantial" and thus unreasonable.

[16] The Court is aware that Defendant's determination letter (ECF 42-4) does not state insufficient documentation of the claimed impairment or lack of a treating doctor's recommendation for a remote accommodation as a reason for the denial. That is a fact that favors Plaintiff, but it is not enough for her to prevail on her claim.

*McGuinness*, 170 F.3d at 979. Defendant is not obligated to lower or substantially modify its academic standards to comply with disability law. *Gati v. W. Kentucky Univ*., 762 F. App'x 246, 250 (6th Cir. 2019). The reasonableness of an accommodation can involve a fact-intensive, case-specific inquiry that is better left for summary judgment or trial. *Griego*, 2021 WL 4947286 at *8. When an employer-defendant moves for summary judgment, courts use a burden-shifting framework to decide whether a workplace accommodation is reasonable. *Osborne v. Baxter Healthcare Corp*., 798 F.3d 1260, 1267 (10th Cir. 2015). Defendant cites no case law applying that same framework in the educational context. Nevertheless, the framework allows this Court to make the same dispositive inquiry: is there evidence from which a jury could disagree with Defendant and find that Plaintiff's requested accommodation indeed was reasonable?

**a. Is the Requested Accommodation Reasonable on Its Face?**

Plaintiff has the initial burden of showing that her requested accommodation is "reasonable on its face, i.e., ordinarily or in the run of cases." *Osborne*, 798 F.3d at 1267. Defendant's first argument is that Plaintiff cannot make this initial showing because she does not show an underlying need for the remote accommodation in the first place. This Court addresses that particular issue above in the context of whether Plaintiff gave Defendant enough information by which to evaluate her request.

Defendant argues that the accommodation is not reasonable on its face. This shifts focus to the accommodation that Plaintiff specifically requested. It is undisputed that Plaintiff is the one who proposed the accommodation for her social anxiety and ASD. According to Plaintiff, those two mental health conditions impair her ability to learn. ECF 143-3; ECF 143-6 at p. 61; ECF 143-7 at pp. 16-19. She did not engage in a deliberative process with her mental health care providers,

her professors, or the Access Center to explore different ways to accommodate her impairment. There was no discussion of potential options that could increase her ability to function in the classroom. Rather, there was only one form of accommodation—to take the classes remotely—as she proposed it. Plaintiff faults Defendant for not proposing an alternative accommodation, but it was she who kept the focus on remoting-in or an online format.

The immediate issue at the time she made her request involved the two upper-level math classes that she was planning to take for the next semester. However, Plaintiff clarified that she sought the remote accommodation not only for those two particular classes but for the rest of her math program. This raises the question of how in actuality she could attend and participate in the math courses "remotely."

Initially, she asked to take the classes "purely" or "completely" "online." ECF 1-1; ECF 143-1 at p. 2. Later, Plaintiff reframed her request by asking to remote-in to the classroom such as by propping up a camera or by someone recording the lecture. In other words, rather than completely re-organize the course for an online format, the professor and the other students would remain in the classroom, where she would join them from a remote setting. Plaintiff also wanted remote test-taking. Plaintiff does not explain how her suggestions would work in practice. This Court construes this aspect of her request as a way to make the accommodation simpler or easier to implement. However, Plaintiff continues to reference the online format to support her position. She says that she found the online class format to be helpful for her in several different ways. Not only did it free her from in-person attendance and participation, but the overall structure and organization was helpful. ECF 143-6 at pp. 40-41. She also refers to online classes as an example of how her requested accommodation is feasible. ECF 143-7 at p. 19.

To remote-in to an in-person instructional environment is a substantial departure and does not easily fall within the scope of what might be assumed as ordinary or run of the mill. However, the changes in technology that the COVID pandemic prompted makes Plaintiff's proposal perhaps more plausible. In addition, Defendant cites no case law that holds an online class accommodation is per se unreasonable. Defendant cites *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004) which discusses the employment-context equivalent of tele-work. However, this Court does not read *Mason* as creating such a per se rule. *Mason* held that remote work is unreasonable if it eliminates an essential job function and is a case-specific inquiry. *Id*. *See also*, *Hurt*, 664 F.Supp.3d at 1236-37 (discussing the reasonableness of a work-at-home accommodation). Both *Gati* and *Mason* were decided before the COVID pandemic. This Court resolves the initial step in the analysis in Plaintiff's favor.

**b. Does the Accommodation Cause a Fundamental Alteration?**

If, for present purposes, this Court assumes that Plaintiff can make the initial showing, then the burden shifts to Defendant to show that it cannot provide the requested accommodation without undue hardship or fundamentally altering the courses. Defendant must "present evidence of its inability to accommodate." *Osborne*, 798 F.3d at 1267. In the employment context, a defendant "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Osborne*, 798 F.3d at 1267. In the educational context, a school may deny accommodations that "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). An accommodation "exceeds the bounds of reasonableness" when it "begins to fundamentally alter a school's educational offerings". *Gati*, 762 F. App'x at 250. Applied together, a school-defendant meets its burden of showing the unreasonableness of a

proposed accommodation if it "would (a) impose undue hardship on the operation of the defendant's service, program, or activity [in terms of financial or administrative burden], or (b) require a fundamental or substantial modification to the nature of its academic program or standards". *Dean v. Univ. at Buffalo Sch. of Med. & Biomed. Sciences*, 804 F.3d 178, 190, 191 (2nd Cir. 2015). "Whether a requested modification would work a fundamental alteration requires a fact intensive [and individualized] inquiry." *Hershman v. Muhlenberg College*, 17 F.Supp.3d 454, 458 (E.D. Penn. 2014) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) and denying defendant's motion to dismiss).

The student in *Gati* was in a situation analogous to Plaintiff. Mr. Gati's impairment limited how far he could travel. Part-way into his degree program, Mr. Gati learned that he could not take all of his program's required courses at his local satellite campus. Mr. Gati asked to attend remotely those classes offered at the main campus. The university denied the request because it could not teach the subject matter—clinical counseling—via remote technology without jeopardizing the program's academic integrity. *Id*. at 249. The university proffered evidence about the program's "experiential" nature and the need for in-class interaction. The court granted summary judgment in the university's favor because no rational jury could find Mr. Gati's proposed accommodation reasonable.[17] *Id*. at 251.

Like Mr. Gati, Plaintiff found herself in a situation in which she was unable to take her required courses in person, and like Mr. Gati, she asked for a remote accommodation. Like that university, the Defendant here presents evidence that adequate instruction depends on in-person

[17] The Court in *Gati* also found that if the plaintiff fails to propose a reasonable accommodation, then necessarily the plaintiff has failed to engage in the interactive process. 762 F. App'x at 252.

participation. This evidence comes from the Declaration (ECF 143-12) of the department's chairperson, Dr. Ribble, as well as from the Declarations (ECF 143-13 and ECF 143-14) of the two professors who taught the subject courses. This Court incorporates those Declarations into the below discussion.

(1) Online Format

Plaintiff did not necessarily request that the two subject math classes be converted from the in-class format (as planned) to an online format. Nevertheless, she did make reference to the online format both at the time and in her present arguments. It is one of the means by which Plaintiff contemplated remote attendance. By "online format," this Court means the use of a platform through which the entire instructional experience occurs online. It is the kind of format that was offered during the COVID pandemic, and the kind of format Plaintiff says she overall prefers. Defendant presents strong evidence that such a format change would be substantial and fundamental.

As Dr. Ribble explains in her Declaration (ECF 143-12), the department purposefully returned to the in-class format following its experience with the online format during the COVID pandemic years. There is no online alternative for either Plaintiff's two enrolled classes or the degree program generally. As the two professors indicate in their Declarations (ECF 143-13 and ECF 143-14 at ¶ 16), planning and designing a class for in-person instruction differs from planning and designing a class for online instruction. Because the department had "designed and structured" its math program "for on-campus, in-person learning, permitting a student to attend all upper-division courses remotely would have substantially altered the degree program." ECF 143-12 at ¶ 27. In the employment context, Plaintiff's request could be regarded as the equivalent of

restructuring a job, and "job restructuring is not a reasonable accommodation." *Osborne*, 798 F.3d at 1271.

"The Department's faculty generally found remote instruction to be an ineffective method for teaching and learning mathematics." ECF 143-12 at ¶ 26. There was less interaction, less engagement, and less accurate testing. ECF 143-12 at ¶¶ 11, 13, 26. Dr. McKenna found the online format more difficult in several respects. ECF 143-13 at ¶¶ 12-13. Dr. Ribble explained that the shortcomings with remote instruction "would be even more true if one student was attempting to attend remotely, while the rest of the class was engaged in in-person in the classroom." ECF 143-12 at ¶ 26.

The math department's goal of returning the math degree program to an in-person, in-classroom format was meant to increase overall academic quality and integrity. The purposeful move away from the online format is evidence that runs in Defendant's favor, but by itself it is not conclusive. Just because the overall program is designed to be a certain way does not necessarily mean there is no room for adaption or accommodation on an ad-hoc basis. It is possible that a particular upper-level math course still may be amenable to a particular remote participation option. Thus, the inquiry also entails consideration of the two enrolled math classes, specifically.

(2) Remoting-In to the Classroom

Plaintiff did not limit her request to the online platform. Plaintiff proposed the alternative whereby she would join the professors and students in the classroom from a remote location. She proposed several different ways by which to do this, either with video teleconferencing technology or lecture recordings.

This option represents less of a change to the overall design of the math program or the

two courses. The courses would remain in their in-classroom format. Of course, there are technological options that allow a person to join a group remotely and interact with that group. For purposes of the present analysis, this Court does not find persuasive Defendant's reason for denying the request because "[t]he department do[es] not have technology in any of their classrooms to record lectures or offer a class in a hybrid or hyflex format." ECF 42-4. It is also possible that other professors might teach these same subjects in a way more amenable to a hybrid format.

While there may be the technological capability to remote-in to the classroom and while it would not require a change to the program's overall intended design, it would represent another kind of fundamental change. There is evidence that it would be difficult to incorporate Plaintiff's remote participation into how the professors planned to teach the subjects. Both professors designed these courses with an emphasis on interaction and collaboration. ECF 143-13 at ¶¶ 4-7; ECF 143-14 at ¶¶ 11-13. In this way, the class learns through problem-solving activities and real-time feedback. They are not taught passively through lectures.

Dr. McKenna explained that teaching the courses as planned with one student appearing remotely—and also monitoring that student's progress—would entail additional effort on the professor's part. ECF 143-13 at ¶¶ 16, 19. Dr. Harder explains that such a hybrid situation "would require . . . the creation of a new section of the course". ECF 143-14 at ¶ 17. Thus, the remote accommodation would represent a substantial change from the professors' perspective.

The remote accommodation also would have a significant impact on the student-side. Dr. Harder explains that allowing one student to participate remotely would create "a deficient educational experience" for that remote student. ECF 143-14 at ¶ 17. Magnified across the whole

degree program, Dr. Ribble explains, the remote student "would not be receiving the same comparable education or degree as those completing the degree as designed." ECF 143-12 at ¶ 27. Instead, the remote student would be advancing without completing the program's in-person components along with the other students "or demonstrating engagement and mastery of the materials through in-person participation." *Id*. The purpose of the accommodation is to provide the same educational benefit, not to exempt the student from the program's general requirements.

(3) Remote Testing

While the focus of Plaintiff's request was on remote attendance, she also wanted remote test-taking. Because it was not the focus of Plaintiff's request, the record is not as well developed as to exactly what Plaintiff contemplated for this aspect of her remote participation. It is unclear whether Plaintiff asked to be excused from all proctored testing under any accommodative circumstances. Dr. Ribble explains that "in-person, proctored test-taking" is required for all department courses, including its online offerings. However, a student is not limited to taking tests in the classroom. A student also may take tests at the Access Center or at its proctoring site. ECF 143-12 at ¶ 9.

While potentially at least there may be technological solutions to remote test-taking, Plaintiff did not ask for them at the time. Even if there were a way for Plaintiff to take tests from home under controlled circumstances that ensured the integrity of the results, that would only be a partial solution. Dr. McKenna explained that she still would have to re-format the tests. ECF 143-13 at ¶ 16. Second, the professors would lose the benefit of the other way in which they would measure her progress. Dr. McKenna grades students not just on the basis of testing and written assignments but also in-class quizzes and learning activities. ECF 143-13 at ¶ 9. Dr. Harder

observes students and provides feedback as they work in class. ECF 143-14 at ¶ 13. Dr. Harder added that the way in which student learning is assessed depends on the course format. ECF 143-14 at ¶ 16.

(4) Deference

This Court is cognizant that in-class instruction may not be the only way in which upper-level math can be taught. There may be other subjects which do require physical presence and hands-on or face-to-face learning, either by the very nature of the subject or because of accreditation standards.[18] Obviously, it is possible to teach upper-level math remotely—as Defendant did during the COVID pandemic and some other professors have done. But Defendant purposefully brought the classes back into the classroom to increase the quality of instruction and to ensure academic integrity. Defendant explains why its upper-level math program now is designed the way it is. The professors explain why they planned for the two classes to be taught in-person and in the classroom. The explanation is reasoned and sound; it is rational and justifiable. As such, Defendant's explanation for why it regarded the requested accommodation as unreasonable is entitled to deference. *See Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 26 (1st Cir. 1991).

A federal court "is ill equipped to evaluate the proper emphasis and content of a school's curriculum", and federal court should "afford a university's judgment and discretion great respect." *Gati*, 762 F. App'x at 250-51 (internal citation omitted). "Educational institutions are

[18] For example, the court in *Harnett v. Fielding Graduate Inst.*, 400 F.Supp.2d 570, 580 (S.D.N.Y. 2005), found a request for video teleconferencing unreasonable in part because the accreditation of the school's clinical psychology doctoral program required 300 hours of face-to-face contact with faculty.

accorded deference with regard to the level of competency needed for an academic degree." *McGuinness*, 170 F.3d at 979*; see also*, *McCulley*, 591 F. App'x at 650-51; *Dean*, 804 F.3d at 191, and *Forbes v. St. Thomas Univ., Inc*., 768 F.Supp.2d 1222, 1232-33 (discussing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985) and *Wynne*, *supra*). The same applies in the employment context. A court's inquiry into a job's essential functions "is not intended to second guess the employer or to require the employer to lower company standards." *Mason*, 357 F.3d at 1119 (internal citation omitted).

Plaintiff does not put into genuine dispute Defendant's rationale. There is no evidence to suggest that Defendant's explanation is pretext or otherwise unpersuasive. Consequently, Plaintiff does not counter the deference that this Court otherwise should give to Defendant's stated goals in how its math program should be structured and offered.

(5) Summary

Even viewing the matter in the most Plaintiff-favorable way, Plaintiff's request still would amount to a fundamental change in how those two courses are taught and how student progress is measured. Moreover, this Court must give deference to Defendant's explanation of how these courses should be taught and how to maintain the integrity of its academic program.

Under *Osborne*'s burden-shifting framework, Defendant presents evidence that Plaintiff's requested remote accommodation is unreasonable because it would amount to a fundamental change to how the two enrolled courses (and potentially the upper-level math degree program) are taught and their academic integrity. Stated differently, the record contains competent, substantial evidence from which a jury could find that the accommodation is not reasonable and that the law did not require Defendant to provide it.

Defendant meets its burden of showing how Plaintiff's request would fundamentally change the nature of the two classes specifically in terms of how the professors designed them, teaching method, and student progress monitoring.

**c. Plaintiff Makes No Substantive Rebuttal**

Under *Osborne*'s burden-shifting framework, the onus now shifts to Plaintiff to present evidence "concerning her individual capabilities and suggestions for possible accommodations to rebut [Defendant's] evidence." 798 F.3d at 1268. Plaintiff retains "the ultimate burden of persuading the trier of fact that [she] has been the victim of illegal discrimination based on [her] disability." *Id*. Stated differently, the burden now shifts to Plaintiff to show a genuine dispute of fact over the reasonableness of her requested accommodation and to show how a jury could find that it does not constitute a fundamental change to the math program. Plaintiff does not do so.

Plaintiff's argument rests on the assumption that remoting-in is generally possible and that the math courses can be offered online. However, her own admissions contradict that idea. ECF 143-6. She does not tackle head-on Defendant's explanation of how in practice allowing her to be one student who remotes-in to the classroom creates a fundamental incompatibility. She does not bring into genuine dispute the interactive and collaborative way in which the professors planned to teach the two classes or the shortcomings with the online approach that the department seeks to avoid.

She also does not explain how her requested accommodation will let her learn the subjects with equal footing. This raises an important point about the very nature of her requested accommodation. The primary reason for requesting remote attendance is not to mitigate a physical inability to access the classroom. Rather, it is to provide an indirect way to attend class that reduces

social interaction. Even if technology could allow her to remote-in or listen to recordings of class instruction on her own time, she does not address whether the requested accommodation will let her engage in the courses' highly interactive and collaborative process.

Plaintiff's position suffers from two defects. First, she does not show how her requested accommodation would have been effective in the sense of allowing her to learn the subjects. Even if it could be effective, she does not counter Defendant's demonstration of how it is unreasonable in its impact. *See Barber* ex rel. *Barber v. Colo. Dept. of Revenue*, 562 F.3d 1222, 1232 (10th Cir. 2009) (noting how the ADA does not define "reasonable" as simply meaning the same as "effective," and how an otherwise effective accommodation still "could prove unreasonable because of its impact.") Plaintiff's situation differs from that discussed in *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), a case to which Plaintiff cites in support. To accommodate his deafness and follow his trial, Mr. Duvall asked the defendant court officials for a videotext display with real-time transcription. In contrast to how Mr. Rasheed handled Plaintiff's request, the defendants in that case did not undertake a meaningful inquiry into that technology's availability, *id*. at 1136, and thus its reasonableness.

**3. Conclusion**

Even if generally speaking a dispute over the reasonableness of a requested accommodation is fact-intensive, the specific facts and circumstances in this case presents such a situation that warrants ruling by way of summary judgment.

The professors who would be teaching the two courses in which Plaintiff enrolled specifically had designed them for in-person interaction and collaboration in the classroom. Added to that was the department's plan for a math degree program that was based on an in-person, in-

classroom format. This was not an arbitrary decision but rather purposefully designed as such to improve the program's quality. Plaintiff's social anxiety and ASD impair her ability to attend in-person classes. Plaintiff asked Defendant for accommodation. Defendant's Access Center asked Plaintiff for supporting information, and it consulted with the math department and the two professors. The math department explained why the two courses were not amenable to Plaintiff's request for remote attendance. Even after construing many other points in Plaintiff's favor, the evidence would not allow a jury to find that Plaintiff's requested accommodation, as applied for these two courses, would not fundamentally change how those two courses were offered.

Because Plaintiff does not proffer substantive, probative evidence to challenge Defendant's defense head-on, Plaintiff fails to show a genuine dispute of fact as to this essential element. If there is no genuine dispute of fact, then Defendant is entitled to a summary ruling in its favor.

Defendant's Motion for Summary Judgment [ECF 143] should be granted, and summary judgment should be entered in Defendant's favor on Plaintiff's failure-to-accommodate claim.

**B. Intentional Discrimination—Deliberate Indifference**

There are different theories upon which a plaintiff may base a disability discrimination claim. *J.V. v. Albuquerque Public Schs*., 813 F.3d 1289, 1295 (10th Cir. 2016). One such theory is the failure to accommodate, which this Court discusses above. Another such theory is intentional discrimination. As Magistrate Judge Varholak stated in his Recommendation [ECF 78] on Defendant's Motion to Dismiss, "Plaintiff argues that Defendant intentionally discriminated against her by denying Plaintiff an accommodation to attend several math classes remotely."

As with the failure-to-accommodation claim discussed above, the intentional discrimination analysis is the same under both the ADA and the Rehabilitation Act. *J.V.*, 813 F.3d

at 1298, n. 6; *Borwick*, 2013 WL 1149543 at *9; *Mullen v. Adams Cnty. Comm'rs*, No. 21-cv-02398-RM-NYW, 2022 WL 1266618, at *9 (D. Colo. Apr. 28, 2022).

Plaintiff frames her intentional discrimination claim in terms of deliberate indifference to her need for a reasonable accommodation. This is also how she argues it in her Motion for Summary Judgment. ECF 135.

**1. Elements of a Deliberate Indifference Claim**

To prevail on an intentional discrimination claim, a plaintiff need not go so far as to prove personal animosity or ill will on the defendant's part. *Mullen*, 2022 WL 1266618 at *9. Rather, intentional discrimination may be inferred if the defendant acted with "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Barber*, 562 F.3d at 1232 (citing *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999)). As applied to this case, Plaintiff's claim is that she had the legal right to the remote accommodation; Defendant knew of the substantial likelihood that her right would be harmed; but Defendant failed to act despite that knowledge. *See Barber*, 562 F.3d at 1229 (stating the two elements of deliberate indifference in the context of intentional discrimination as (1) knowledge that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood"). A defendant does not violate a student's disability rights by declining an accommodation that would fundamentally alter its program. *McCulley*, 591 F. App'x at 651. Moreover, a defendant must have been more than merely negligent in its failure to act. *J.V.*, 813 F.3d at 1298.

The next question is how deliberate indifference in the context of intentional discrimination translates to the failure-to-accommodate situation. This Court paraphrases one expression of the

elements of a deliberate indifference to accommodate claim as:

(1) plaintiff requested the accommodation,

(2) it was plainly obvious that the accommodation was reasonable and necessary, and

(3) it was plainly obvious at that time that granting the accommodation would not be an undue burden on defendant and would not have fundamentally altered defendant's program.

*A.P.* ex rel. *Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F.Supp.2d 1125, 1147 (D. Minn. 2008). Although *Peterson* was not decided within the Tenth Circuit, its detailed discussion and reliance on *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) makes it persuasive. Under *Peterson*'s reasoning, Defendant is entitled to summary judgment if no reasonable jury could find that it was plainly obvious that (1) the requested accommodation was reasonable <u>or</u> (2) at the time when Plaintiff requested the accommodation, Defendant's undue burden/ fundamental alteration defense would fail. 538 F.Supp.2d at 1148.

To defeat summary judgment on her intentional discrimination claim, Plaintiff generally must show how a reasonable jury could infer that, given Defendant's knowledge of her limitations, coupled with Defendant's failure to provide necessary accommodations, Defendant acted with deliberate indifference to a strong likelihood that its denial would likely result in a violation of Plaintiff's ADA and Rehabilitation Act rights. *Freeman v. Colo. Dep't of Corrs.*, No. 16-cv-02181-NRN, 2019 WL 1296631, at * 7 (D. Colo. Mar. 21, 2019) (denying summary judgment because of a fact dispute over whether defendant provided plaintiff with reasonable accommodations).

### 2. No Genuine Dispute of Fact to Support Plaintiff's Claim

Plaintiff argues that by "notifying Dr. Ribble, Mr. Rasheed, and Mr. Brown of her

disability, her need for accommodation, and providing them consistent documentation of her disability, along with [her mother's] repeated reminders of Plaintiff's federal rights, Plaintiff has established deliberate indifference." ECF 135 at p. 8. For the reasons this Court explains below, that argument falls short of what is needed to support a deliberate indifference claim. Deliberate indifference requires an obvious need, a plainly reasonable accommodation, and culpable disregard. The record lacks evidence that puts those required elements in dispute.

**a. The Remote Accommodation Was Not Obviously Needed**

When Plaintiff made her request, the need for the remote accommodation was not obvious. As this Court explains above in Section I(A)(1), there was ambiguity in Plaintiff's situation. She made the request after two years in college. ECF 119 at pp. 1-2; ECF 134 at p. 6; ECF 143-6 at pp. 24, 39; ECF 153 at p. 1. The mere fact that she has social anxiety and Level 1 ASD does not necessarily mean she has no ability to be in the classroom. To help better understand her request, Mr. Rasheed asked for supporting documentation from her mental health care providers. ECF 134 at pp. 4, 10, 14; ECF 143-7 at pp. 14, 38-39. Neither report that Plaintiff submitted expressly states that she (1) is unable to attend classes in the classroom setting or (2) requires a remote attendance accommodation. ECF 143-7 at pp. 16-19; ECF 143-3. Mr. Rasheed did not regard the submitted information as supportive of Plaintiff's request. ECF 143-4 at ¶¶ 11, 16. Mr. Rasheed's supervisor was of the same opinion. ECF 143-4 at ¶¶ 11, 16.

**b. The Remote Accommodation Was Not Obviously Reasonable**

When Plaintiff made her request, remote attendance was not an obviously reasonable accommodation. Viewed from a different perspective, when Plaintiff made her request, it was not plainly obvious that remote attendance would have no substantial impact on the math courses. This

Court explains this point—and the relevant evidentiary record—above in Section I(A)(2)(b).

Mr. Rasheed doubted whether it would be reasonable. *See e.g.* ECF 148 at p. 13. Mr. Rasheed contacted the math department chairperson and the two professors for their input. ECF 143-4 at ¶ 19; ECF 143-12 at ¶ 23; ECF 143-15 at p. 3. As Defendant explains now, attending the two upper-level math courses (and implicitly the entire math degree program) remotely would fundamentally change those course offerings, in terms of the program's overarching goals, how the professors had planned to teach them, and Plaintiff's own educational experience. In other words, Defendant articulates a legitimate, lawful, and non-discriminatory reason why it denied Plaintiff's request. Plaintiff does not put their explanation into genuine dispute.

Even if, hypothetically speaking, Dr. Ribble and the professors were incorrect in their appraisal, their explanations still were reasonable and rational. Mr. Rasheed proceeded on the basis of that information. The situation was not that Mr. Rasheed had information that showed the need for the accommodation and its reasonableness—but ignored it.

**c. No Culpable Disregard**

There is no evidence that Defendant was indifferent to Plaintiff's need for accommodation. *McCulley*, 591 F. App'x at 651 (granting summary judgment on plaintiff's intentional discrimination claim). Plaintiff also cannot show that Defendant failed to act. To the contrary, Defendant took substantive action and engaged in a meaningful interactive process. Mr. Rasheed asked for documentation that would help support Plaintiff's request, which was the focus of their December 20, 2022 discussion. ECF 134. Mr. Rasheed referred Plaintiff to her academic advisor (ECF 1-2; ECF 1-3; ECF 143-4 at ¶ 13) and to her professors to find solutions (ECF 134 at p. 4). Plaintiff construes Mr. Rasheed's email to Dr. Ribble on December 20, 2022 (ECF 148 at p. 13)

as showing that Mr. Rasheed already had denied her request by that point. There is no dispute that Mr. Rasheed doubted whether Plaintiff's request was reasonable. The record also is clear that Mr. Rasheed continued to consider the matter and obtain information until the denial letter issued on January 4, 2023. Ongoing deliberation and the search for supportive information is the opposite of indifference.

Plaintiff of course disagrees with the correctness of Mr. Rasheed's decision. She believes that she is only able to take courses remotely, and she believes that remote participation in in-classroom classes is reasonably feasible. However, simply making an incorrect decision is not deliberate indifference. Even if Defendant was negligent in denying her request, it still would not be a sufficient degree of culpability to support the claim.

Plaintiff's situation differs from that discussed in *Duvall*, a case on which she relies to support her Motion for Summary Judgment [ECF 135]. First, there was no dispute that Mr. Duvall required a hearing accommodation for his trial, whereas here, Plaintiff's need for accommodation was ambiguous. Second, Mr. Duvall informed the defendants that the two accommodations that they had offered were inadequate. Mr. Duvall requested a videotext service instead. Importantly, the defendants made no meaningful inquiry into that option's availability; they simply assumed that it was not available. 260 F.3d at 1140. In contrast, Mr. Rasheed did confer with Plaintiff; he advised her to obtain supporting documentation; and he consulted with the math department and professors about the nature of the course offerings. Mr. Rasheed therefore made an informed decision on Plaintiff's request.

Plaintiff also relies on the comment by Dr. Ribble that "[u]ltimately, if you need to take all of your classes remotely, our program may not be the program for you" as well as her response

stating that Defendant had violated her rights. ECF 1-4. Plaintiff likewise relies on the exchange with Mr. Brown. Plaintiff argues that she asked for his help to bring everyone together to provide her with the accommodation, but she did not hear back from him. Neither interaction is material to Plaintiff's claim.

Even if there is a genuine dispute over how Dr. Ribble's email could be construed, it is not a material dispute. Dr. Ribble was not the decision-maker, but rather it was Mr. Rasheed and the Access Center (as Dr. Ribble explained to Plaintiff). ECF 1-4. There is nothing in the record that suggests Mr. Rasheed (who informed Plaintiff of his own physical disability (ECF 134 at p. 13)) or the Access Center had any disability-based discriminatory animus against Plaintiff or were unable to make their own independent determination. Nor did Dr. Ribble, herself, ignore Plaintiff. Rather, Dr. Ribble suggested that she contact her professors and contact the Access Center. ECF 1-4.

The actions of Mr. Brown likewise evince no deliberate indifference. First, he was not a decision-maker, and he was not part of the appeal process. Second, Mr. Brown did correspond with Plaintiff's mother, asking her for clarification. Third, Mr. Brown undertook his own internal investigation, speaking with both Mr. Rasheed and Dr. Cermak. Plaintiff's mother accused Defendant of violating Plaintiff's disability rights, but after speaking with the decision-makers, Mr. Brown saw no wrongdoing. ECF 143-17 at ¶ 11. By the time of Mr. Brown's involvement, the decision already had been made, and Plaintiff already had been informed how to appeal. *Id*.

Plaintiff may have believed that Defendant violated her disability rights, and indeed, that is the subject of this lawsuit. However, making that accusation is not the same as putting Defendant on notice of an obvious accommodation need.

### 3. Conclusion

Plaintiff pleaded a plausible claim of intentional discrimination, as Magistrate Judge Varholak found in his Recommendation [ECF 78] on Defendant's Motion to Dismiss. The summary judgment analysis, by contrast, takes the evidentiary record into account. On the basis of this evidentiary record, a reasonable jury could not disagree with Defendant that Plaintiff's remote attendance would cause a fundamental change to the course offerings. Stated differently, a reasonable jury could not find on the basis of this record that the remote accommodation was reasonable. If the remote accommodation was unreasonable, then Plaintiff did not have a right to it. If Plaintiff did not have a right to it, then Defendant did not act with deliberate indifference to Plaintiff's rights when it denied her request.

Defendant's Motion for Summary Judgment [ECF 143] should be granted, and summary judgment should be entered in Defendant's favor on Plaintiff's discrimination claim.

## II. Plaintiff's Motion for Summary Judgment

This Court accounts for the arguments that Plaintiff makes in her Motion for Summary Judgment above, in its consideration of the Defendant's Motion for Summary Judgment. In this way, this Court uses Plaintiff's Motion as an additional response in opposition to Defendant's Motion.

This Court now considers Plaintiff's Motion in its own right. In this context, she carries the ultimate burden of proof. For her to prevail on her claims summarily without the need to go to trial, Plaintiff "must establish, as a matter of law, all essential elements" before Defendant is obligated to make a rebuttal. *See Pelt*, 539 F.3d at 1280. In other words, she must show affirmative evidence that proves all elements of her case and that no reasonable jury could disbelieve her

evidence.

This Court need not repeat the elements of her claims for relief. It suffices to say that Plaintiff does not show how a jury could find in her favor on this evidentiary record. Not only is there no genuine dispute of fact over all the elements by which to defeat Defendant's request for summary judgment, there is no evidence that conclusively shows her affirmative entitlement to relief by which to grant Plaintiff's Motion.

Plaintiff's Motion for Summary Judgment [ECF 135] should be denied.

## CONCLUSION

Plaintiff has a disability, and to accommodate that disability, she asked to remote-in to her upper-level mathematics classes or take them online. After thoughtful and diligent consideration, Defendant denied her request. In Plaintiff's view, Defendant should have provided the accommodation. That is her allegation. To overcome Defendant's Motion, Plaintiff must proffer evidence that supports each element of her claims as case law defines them. This includes showing that she complied with her obligations as part of the interactive process. Additionally, this requires that her request is "reasonable" without altering the course offerings in a fundamental way and "deliberate indifference" in how Defendant handled her request as the law defines those two concepts. The evidence falls short in establishing all of the essential elements. Plaintiff does not proffer—and upon its own independent record review and even viewing the evidence in a light most favorable to Plaintiff, this Court does not see—evidence that could permit a reasonable jury to find in her favor on either claim.

Accordingly, the Court respectfully recommends[19] as follows:

Defendant's Motion for Summary Judgment [ECF 143] be **granted in full** and that summary judgment be entered in Defendant's favor on all of Plaintiff's ADA and Rehabilitation Act claims.

Plaintiff's Motion for Summary Judgment [ECF 135] be **denied**.

Because no claims remain, this Court recommends that this case be closed.

DATED at Denver, Colorado, this 24th day of February, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge

[19] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).